The State ex rel. Foster vs. Graham.

The State ex rel. Foster vs. Graham.

*March 25 — May 15, 1884.*

State Superintendent: Supreme Court. *(1) Review on certiorari of decisions of state superintendent.*
Alteration of School District. *(2) Notice: presumption: waiver.*

1. This court has jurisdiction to review on *certiorari* a decision of the state superintendent upon an appeal relating to the alteration of a school district, although the statute (R. S., sec. 166, subd. 4) provides that such decision shall be *final.*
2. A town board has no power to alter the boundaries of a school district unless proper notice is given as required by sec. 418, R. S. The giving of such notice will not be presumed; nor is the order of the board, reciting that due notice was given, *prima facie* evidence of the fact; nor can the officers of the district waive the notice.

CERTIORARI to the State Superintendent.

The case is stated in the opinion.

*Pinney & Sanborn,* for the plaintiff in error, to the point that the recital in the order of the town boards, that they "met pursuant to notice given as provided by law," was not *prima facie* evidence that the requisite notices were given, and that there was no presumption of jurisdiction, cited: *Williams v. Holmes,* 2 Wis., 129; *Sibley v. Waffle,* 16 N. Y., 189; *Bridge v. Bracken,* 3 Pin., 76; Blackwell on Tax Titles, 72, 73; *People v. Brooklyn,* 21 Barb., 484; *People ex rel. v. Smith,* 7 Hun, 17.

The *Attorney General,* for the respondent, contended, *inter*

*alia*, that the court had no jurisdiction to review the decision of the state superintendent on a common law writ of *certiorari*.     The statute making his decision *final* should prevent a review by any court by direct proceedings.    Const., art. X, sec. 1; R. S., secs. 497, 166, subd. 4; *People v. Betts*, 55 N. Y., 600; *People v. Collins*, 34 How. Pr., 336; *Euston v. Calendar*, 11 Wend., 91; *Ex parte Bennett*, 3 Denio, 175; *Whitbeck v. Billings*, 1 Hun, 494; *People v. Eckler*, 19 id., 609; *Joint School District v. Wolfe*, 12 Wis., 685; 5 Wait's Pr., 456.    The writ of *certiorari* is one of the prerogative writs; and unless the subject matter of the action constitutes a "prerogative case" the writ will not be issued from this court; or if issued, will be quashed either before or after return made thereto.    The formation and alteration of school districts are local public matters, and do not directly involve the sovereign prerogative or interest of the state at large, so as to call for the prerogative jurisdiction of this court. *Attorney General v. Railroad Companies*, 35 Wis., 425, 520, 521; *Attorney General v. Eau Claire*, 37 id., 400, 442–4; *State ex rel. Wood v. Baker*, 38 id., 71, 77–79; *State ex rel. Cash v. Supervisors*, id., 554.

Cole, C. J.    This is a common law writ of *certiorari* issued by this court to review a decision of the state superintendent, affirming certain orders of the town boards of Salem and Brighton, in Kenosha county, which changed the boundaries of school districts in those towns.    After the return was made, the attorney general, on behalf of the state superintendent, moved to quash the writ on the ground that it does not lie to review a decision of the state superintendent.    The argument on this point is that the state superintendent is an officer created by the constitution, and that instrument declares that he shall exercise such powers and duties as may be prescribed by law.    Sec. 1, art. X.    The legislature has enacted that any person, conceiving himself

aggrieved by any decision made by any town board, altering a school district, may appeal to the state superintendent (sec. 497, R. S.); while another provision declares that the state superintendent's decisions on appeals "*shall be final.*" Sec. 166.

Notwithstanding this language in the statute, we entertain no doubt but this court has jurisdiction to review the decision of the state superintendent, and this jurisdiction was exercised in the case of *State ex rel. Moreland v. Whitford,* 54 Wis., 150, recently decided. In that case the office or functions of the writ were discussed, rather than the question of jurisdiction; but this was because we then, as now, considered the jurisdiction of this court in the matter indisputable. It is true, the statute makes it the duty of the state superintendent to examine and determine all appeals which, by law, may be made to him, according to the laws regulating the same, and says that "his decisions shall be final." But by the use of the word "final" the legislature did not intend that there should be no judicial review of his decisions. His decisions are "final" until set aside by the courts; but those tribunals have the right to determine whether he has violated any provision of law in making his decision. We do not deem it necessary further to discuss the question of jurisdiction.

But, again, it is said by the attorney general that this court should not entertain the writ because the alteration of a school district is a local matter, not affecting the interests of the state at large, and that the circuit courts are the proper tribunals to review the action of the superintendent. The reason why we assumed jurisdiction of the writ was because we supposed it would be more convenient for the state superintendent to have the cause heard and determined in this court than to send the case to the circuit. Doubtless we might have declined to issue the writ, but the case seemed to us one where we should take jurisdiction.

The motion to quash is therefore denied.

We come now to consider the case on its merits. The counsel for the plaintiff in error insist that the town boards had no jurisdiction to make the orders they did, changing the boundaries of the existing school districts, because the proper notices were not given to the clerks of the districts which were affected by the change. We think this position is sound, and must be sustained. The statute provides: "Whenever the town board shall contemplate an alteration of the boundaries of a school district, they shall give at least five days' notice in writing to the clerk of the district or districts to be affected thereby, stating the time and place when and where they will be present to decide upon such proposed alteration; and such clerk or clerks shall immediately notify the other members of the board," etc. [Sec. 418, R. S.] By sec. 415 it is provided that a joint school district can be altered only by the joint action of the town boards of the towns in which it is organized, "in the same manner that other districts are altered."

The record shows that there were three districts affected by the alteration. School district No. 7, in the town of Brighton, was the northern district; district No. 5, in the town of Salem, was the southern district; and joint district No. 2 was the central district. The record further shows that a notice was given by the town boards of Salem and Brighton to the "clerk of joint school district No. 7, of the towns of Salem and Brighton." As a matter of fact, there was no joint school district No. 7. But the notice was actually given to the clerk of school district No. 2, so that the mistake in the description of the district did not probably mislead any one, and may be disregarded. But it does not appear that any notices were given of the proposed change to the clerks of school district No. 7 in Brighton, and No. 5 in Salem. These notices were essential to authorize the town boards to take any action in the matter; for that these districts were affected by the alteration made by the town boards is a point too clear for discussion. A por-

tion of joint school district No. 2 was attached to and became a part of district No. 7 on the north, and the remainder of the territory of that district was attached to and became a part of school district No. 5 on the south.

Now, it is very plain, unless the requisite notices were given to the clerks of all the school districts which were affected by the alteration, the town boards had no authority whatever to act or decide upon the proposed alteration. The giving of the proper notices was absolutely essential to jurisdiction; without them no jurisdiction would attach. The principle of law has often been affirmed by this court, in these summary proceedings taken by town officers, that jurisdiction is only acquired by a strict compliance with the statutory directions as to giving notice. See *Ruhland v. Supervisors*, 55 Wis., 664, and cases cited by Mr. Justice Taylor in the opinion. That rule of law applies to this proceeding taken by the town boards. In this case it is recited in the orders that the town boards " duly met pursuant to notice given as provided by law; " and it is claimed that this is sufficient proof that the notices were given. But we have not been referred to any provision of law which makes the order of the board altering a school district *prima facie* evidence of the facts therein stated, as is the case in respect to some other orders. See sec. 1298, R. S.; *Williams v. Mitchell*, 49 Wis., 284. We therefore cannot presume, in the absence of all proof on the point, that the requisite notices were actually given to the clerks of school districts No. 7 and No. 5. And as the giving of these notices was a jurisdictional prerequisite to the making of the orders, it should appear that the statute in that regard was complied with. And it was incumbent upon those asserting the regularity of the proceeding and the validity of the orders, to show that the notices were given which would confer jurisdiction of the subject matter upon the town boards.

It is true, the record shows that the officers of school dis-

tricts Nos. 5 and 7, and of joint school district No. 2, consented in writing to the alterations made in their respective districts. But even if the officers of all the school districts affected by the change did consent in writing to the alteration, this would not have dispensed with the necessity of giving the statutory notice to the clerks. The statute requires *the giving of at least five days' notice in writing to the clerks of the districts to be affected by the proposed alteration, etc.*, and it also requires the clerks immediately to notify the other members of the school boards. In this way, presumably, information in regard to the proposed alteration will come to the knowledge of the people of the district, who can have an opportunity to express their views upon the alteration before the town boards when they meet to decide upon it. This is obviously the intent and purpose of having the notices given. The formation, alteration, and dissolution of school districts are matters which vitally concern the people, and in which they take a most lively interest. It is well that they do; for these public schools, which provide for the education of the great mass of our youth, are the real security for social order and the permanency of our popular governments. And because the giving of the proper notice as to any alteration of a school district concerns the public, the officers of the school district cannot waive it or dispense with the giving of it.

It follows from these views that the order of the state superintendent dismissing the appeal in this matter is reversed; and that the orders of the town boards of the towns of Salem and Brighton, made on the 28th day of June, 1883, altering and changing the boundaries of school district No. 7, in the town of Brighton, and joint school district No. 2, of the towns of Salem and Brighton, and of school district No. 5, of the town of Salem, be, and the same are hereby, reversed and set aside.

*By the Court.*— It is so ordered.