UNITED SHOE WORKERS OF AMERICA, LOCAL 132, and
others, Appellants, vs. WISCONSIN LABOR RELATIONS
BOARD and others, Respondents.

*March 18—April 12, 1938.*

*Max E. Geline* of Milwaukee, for the appellants.

For. the respondents there was a brief by the *Attorney General* and *N. P. Feinsinger,* special counsel, and oral argument by *Mr. Feinsinger.*

*Joseph A. Padway* of Milwaukee, for the interpleaded defendant Boot & Shoe Workers Union, Local 312.

ROSENBERRY, C. J. The record in this case is far from satisfactory. The so-called "findings of fact" are argumentative, are a narration of events rather than findings, and on material issues are tentative and inconclusive. They should conform to well-established rules. See *Tesch v. Industrial Comm.* (1930) 200 Wis. 616, 229 N. W. 194; *Creamery Package Mfg. Co. v. Industrial Comm.* (1933) 211 Wis. 326, 248 N. W. 140.

The board failed to comply with the act in another respect. Sec. 111.10 (6) of the act (sec. 111.01 *et seq.,* Stats.) provides:

"Any person aggrieved by *final order* of the board granting or denying in whole or in part the relief sought may obtain a review of such *order* in the circuit court of Dane county by filing in such court a written petition praying that the *order* of the board be modified or set aside. . . . And the findings of the board as to the facts, if supported by evidence in the record, shall be conclusive."

Sec. 111.10 (5) provides that if any person fails to obey an *order* of the board the same may be enforced by appropriate proceedings in the circuit court.

Sec. 111.10 (3) provides that a full and complete record of all proceedings shall be kept, and further:

". . . If upon this record the board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the

board shall state its findings of fact and shall issue and cause to be served on such person an *order* requiring such person to cease and desist from such unfair labor practice. . . . If upon this record the board shall be of the opinion that no person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the board shall state its findings of fact and shall issue an *order* dismissing the said complaint."

Why the board neglected to follow this procedure so plainly indicated, in a case which was to be a pioneer case in this field, we are unable to understand. The jurisdiction of the circuit court for Dane county is limited to reviewing an order. The board can only act upon parties before it by order. We are not unwilling to aid counsel in their effort to secure an interpretation of this act. Certainly the court cannot go beyond the powers conferred upon it by statute. This is not a *certiorari* nor a *mandamus* proceeding, but a proceeding upon petition for review under the act. The legislature has carefully limited the field within which the court may proceed: First, by making the findings of the board conclusive upon the court if supported by evidence; and, second, by confining it "to a review of an order." What is meant by "review of an order" of an administrative agency is clearly understood in the law. The court must examine the record to discover whether or not the findings of fact are supported by any evidence if the findings are challenged. If the findings of fact are so supported or are not challenged, it next inquires whether or not the facts found support the conclusions of the board; and, third, whether the board acted within the scope of its statutory powers in making the order or within its jurisdiction as is often said. What is meant in the statute by the word "modify" is difficult to ascertain. Certainly this court cannot exercise any of the power conferred upon the board. While there has been a departure in many ways from the doctrine of the

separation of powers, it has not yet been held that a court can exercise the powers conferred upon an administrative agency and substitute its judgment for the judgment of the administrative agency. This is so clear that it requires neither argument nor citation of authority to support it. It is possible that under some extraordinary circumstances the court might be warranted in making some slight modification of the order, a modification based, for instance, upon some undisputed fact, but such a case would be an exceptional one. Certainly the court cannot in this case make an order which the statute authorizes the board to make, and then, having made it, proceed to review it.

What is denominated "The Remedy" is a thing not provided for by the act. It is not in form or substance an "order." It is in form a summation and an explanation of why an order is not made. The only equivalent of an order that can be spelled out of "The Remedy" is that the declination of the board to act amounts to an order dismissing the petition. This seems hardly a justifiable assumption, because the board did act and held that in its discretion it could enter no order which would effectuate the policies of the act. This exercise of discretion is in and of itself an act. However, if we hold as the petitioners contend we should that the effect of the declination to act amounts to an order dismissing the complaint, then we must consider the grounds upon which the order was based. As already indicated, this is stated by the board to be:

"Finally, there does not appear to the board to be any affirmative action which we can order respondent to take in view of its unfair labor practices, which will 'effectuate the policies' of the act."

Sec. 111.09 (1) provides:

"Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a

unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment, provided," etc.

Sec. 111.09 (2) provides:

"The board shall decide in each case whether, in order to effectuate the policies of this chapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or other unit, but the board may decline jurisdiction in any case where it believes that the policies of this chapter will be better promoted by not acting."

The provisions of sub. (2) may be so construed as to confer a wide and arbitrary discretion upon the board. No question involving the construction of this provision is raised in this case and for that reason we do not construe it. Taken at its face value, it confers a very broad discretion upon the board. From the language contained in "The Remedy" already quoted, it is apparent that the board exercised the discretion conferred upon it by sub. (2). It in effect said:

"No order we could enter under the circumstances of this case would effectuate the policies of the act. Therefore we decline to act."

The court cannot substitute its judgment for that of the board as to whether or not any proposed action would "effectuate the policies of the act." That is a matter committed wholly to the discretion of the board itself. Such a conclusion is clearly within the terms of the act and one at which the statute specifically authorizes the board to arrive in the exercise of its discretion. The statute does not authorize the circuit court to review the processes by which the board arrived at its ultimate conclusions. The whole matter is treated upon this appeal as if the board was a common-

law court. When the board enters an order authorized by the act upon a set of facts which are supported by the evidence, that order is immune from judicial attack. The fact that the board may have given a wrong reason or have entertained a mistaken view of the law is immaterial if in the end it makes an order which the act authorizes it to make on the facts found. It is the order, not the antecedent process, which is reviewable. In reviewing the proceedings of a court, appellate courts may and often do consider the reasons upon which the trial court acted, but the power of the court to review an order of the board is limited as has already been indicated.

It must be perfectly plain that to review the board's arguments and exhortations is beyond the power of any court. If the board had entered an order in which it said that the petition was dismissed because of the all-union contract entered into with Local 312, then some at least of the questions upon which the decision of this court is sought might have been presented by the record. If we should so consider the order, the board might very well complain and with great justice that it had not declined to act because of the contract of June 4, 1937, but had acted in the exercise of its discretion.

If we should stretch a point and say that such conclusion as the board arrived at under the title "The Remedy" was based upon a mistake of law because it held the all-union agreement entered into between the Freeman Shoe Corporation and the Boot & Shoe Workers Union on June 14, 1937, to be a valid contract, we should make very little, if any, progress for the following reasons:

Sec. 111.09 (1) provides:

"Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive

representatives of all the employees in such unit for the purposes of collective bargaining," etc.

The board found, and upon ample evidence, that the petitioners here did not represent a majority of the employees of respondent. In that situation the petitioners were not qualified to assert any rights under the provisions of sec. 111.09 (1). No question therefore arises with respect to the rights of unions who were competitors for the right to bargain as exclusive representative of all employees as provided in sec. 111.09 (1). There remains then the single question, under the W. L. R. A. may an employer enter into an all-union agreement with a listed union although it may represent only a minority of the employees? Sec. 111.02 (9) provides:

"The term 'all-union agreement' means an agreement between an employer and a labor organization or labor organizations whereby the employees eligible to membership therein are required to be members thereof."

The making of such a contract was valid prior to the enactment of W. L. R. A. See *American Furn. Co. v. I. B. of T. C. & H. of A., etc.* (1936) 222 Wis. 338, 370 *et seq.,* 268 N. W. 250.

Sec. 111.07 provides:

". . . Nothing contained herein shall be deemed to prevent an employer from entering into an 'all-union agreement,' as hereinbefore defined, with a labor organization or labor organizations."

Sec. 111.08 (2) provides:

". . . Provided that nothing in this chapter, or any other chapter, or in any code or agreement approved or prescribed by law, shall prevent an employer from entering into an 'all-union agreement,' as hereinbefore defined, with a labor organization or labor organizations."

Being expressly authorized by the act and valid prior to the act, a contract between an employer and a listed organi-

zation under the circumstances of this case must be held to be valid. Where the right to be the exclusive bargaining agent of employees would be, if the employer had made a contract with a listed union representing a minority of his employees, and there was a union representing a majority of the employees in a unit claiming the exclusive right, cannot be determined here, because such a state of facts is not presented by the record nor has the board designated "the unit appropriate for the purpose" under sec. 111.09 (2). The petitioners contend that although the Local 312 represented a majority of the workers in the employ of the Freeman Shoe Corporation at the time of the execution of the contract, the right to represent some of the workers was procured by unfair labor practices and therefore Local 312 was disqualified as a bargaining agent. Whether the contract was made on behalf of a labor organization representing a minority or a majority of the employees of the Freeman Shoe Corporation is immaterial under the facts of this case. Plaintiffs do not contend that an employer may not bargain with a listed union and enter into a valid contract with it where no other qualified labor organization is in the field. Therefore, we do not reach the question sought to be raised in this case, even if we should assume the board to be in error in finding the contract of June 4th to be a valid contract. The question upon which a decision is sought can only be raised by a listed unit representing a majority of the workers.

It may not be inappropriate to say that in the construction of the act the courts of this state enter upon a new and uncharted field of the law. Courts under such circumstances have very wisely restrained themselves to the decision of questions necessary to a decision in a case actually before them. The wisdom of that course has been strikingly illustrated in the development of the Workmen's Compensation

Act. In *Borgnis v. Falk Co.* (1911) 147 Wis. 327, 133 N. W. 209, the court held that because of the great public interest involved it would pass upon the constitutionality of the statute. Chief Justice WINSLOW, speaking for the court, said (p. 364) :

"There are many objections made to single sections or clauses of the law which we do not find it necessary or advisable to treat at this time. Even should some or all of them be sustained, it is our judgment that the sections or clauses so questioned could not be said to be so far compensations for or inducements to the balance of the law that the entire law must fall. In our judgment it is better to reserve these questions for consideration when an actual case arises which calls for the decision of the court upon them. It is well-nigh impossible for the human mind to call up and contemplate in advance all the considerations which ought to be considered in passing upon the validity of the various incidental clauses of a new and complicated law. The concrete case and its actual circumstances and effects are apt to throw much light upon the question and suggest considerations wholly unthought of when viewing the matter abstractly in advance of any actual experience."

Courts do not decline to decide questions which are not before them because they are not willing to assume responsibility for the decision. When a court decides a question not before it, its decision may, and very probably will, affect the rights of parties who have never had their day in court. The question may, as Chief Justice WINSLOW said, arise under circumstances that cannot be foreseen which may throw much additional light upon the question. Long experience has demonstrated that questions which affect the rights of citizens should not be determined upon hypothetical and supposititious cases. Many perplexing questions will arise in the administration of the W. L. R. A. To use a geological term, a new phase of the relation of employer and employee has obtruded itself in the field of justiciable controversies. It is highly important to all parties immediately concerned, as well as to the general public which has a

vital interest in the matter, that controversies arising under the act should be determined in the light of all available experience. This court has followed and will continue to follow the practice laid down in *Borgnis v. Falk Co., supra.*

In the trial court the "findings and order" of the board were confirmed. In view of the state of the record it is difficult to determine what effect the confirmation has. *In view of that fact,* the judgment of the trial court will be modified by limiting it to an affirmance of so much of the board's determination as dismisses the petition of the plaintiffs, and as so modified, is affirmed.

*By the Court.*—It is so ordered.