SCHOOL DISTRICT No. 3 OF THE TOWN OF ADAMS and others, Appellants, vs. CALLAHAN, State Superintendent of Public Instruction, Respondent, and two other cases.

*March 14—April 15, 1941.*

562

For the appellants there was a brief by *Grady & Fairchild,* attorneys, and *James J. Burke* of counsel, all of Portage, and oral argument by *Daniel H. Grady* and *Thomas E. Fairchild.*

For the respondent there was a brief by the *Attorney General, James Ward Rector,* deputy attorney general, and *Warren H. Resh,* assistant attorney general, and oral argument by *Mr. Rector* and *Mr. Resh.*

FRITZ, J. By stipulation between the parties in cases Nos. 146, 147, and 148 the records therein are included in but one printed case and there is but one set of briefs. In each case there was an appeal to the circuit court under sec. 40.30 (6), Stats. 1939, by the appealing school district from an order which was issued under sec. 40.30 (1), Stats. 1939, by the respondent, John Callahan, as the superintendent of public instruction of the state, and by which he abolished the district in question and attached the land comprising the district to Joint School District No. 10 of the town and city of Adams, in Adams county. Each of the orders directed all assets, liabilities, and records of the district abolished to be turned over to the officers of Joint School District No. 10 to become its property. The circuit court ordered the issues in each case to be framed by the filing of a complaint by the appellants and pleadings in response thereto by the superintendent. Pursuant thereto complaints were filed and the state superintendent demurred to the two causes of action in the complaints in the cases of School District No. 3 and Joint School District No. 9, and to the first two causes of action in the complaint in the case of Joint School District No. 5. An answer was interposed to a third cause of action in the latter case, and on this cause of action judgment was entered for the respondent and no appeal has been taken. The court sustained the demurrers to the other causes of action, and from orders to that effect the appellants have taken an appeal to this court in each case. In so far as the issues on these appeals are concerned, the material facts alleged in the complaints are substantially to the same effect in each case. It suffices to note here the allegations to the following effect. In each case the appellants are the school districts abolished by the order and the members of their boards, who appeal as such members and also in their individual capacity as taxpayers and owners of property in their district, and as the parents of children of school age who

reside therein. The material facts relied upon in the first cause of action are that the electors of the abolished districts have had no voice in the selection of the present board of the Joint School District No. 10, and the control over this district will remain largely in the hands of the electors of the city of Adams because its population is greater than that of the remainder of the district, and that rural problems will be ignored by the city-dominated board; that the children will have to travel greater distances to school than formerly, and they and their parents will be at a disadvantage and suffer in several respects alleged, and their farm values will decline; that less state aid will be received by the one consolidated district than was received by the four separate districts, and local taxes will be increased; that Joint School District No. 10 has indebtedness, whereas the abolished districts are free from debt; and that the teachers of these districts will be deprived of their jobs. The material facts relied upon in the second cause of action are that the decision to abolish the districts and to attach them to Joint School District No. 10 was made by one Merritt, a subordinate in the superintendent's office; that no notice of the change of districts was given except a notice of a meeting which was sent to members of the district boards and recited that the boundaries would be changed, and that at these meetings Merritt presented the proposed plan of consolidation but refused to entertain any objections by the members in attendance; that prior to the issuance of the orders representatives of each district called upon the superintendent and objected to his plan, but were told by him that he relied upon the opinion of Merritt and that the decision would not be changed; that no hearing was had before the state superintendent; that the decision to abolish each of the districts and to attach them to Joint School District No. 10 was in the first instance made by Merritt, and the superintendent did not, prior to June 28, 1940, independently investigate the facts material to the order com-

plained of; that he considered a district survey statement and schedule of expense and certain other items, which was prepared in relation to each district, and the recommendation of Merritt thereon, but he did not prior to that date consider the facts which the abolished districts alleged in their first cause of action; and that the districts had no notice of the time and place at which the subordinate made his recommendation to the superintendent, and the form of the orders in question were drawn by Merritt and the superintendent's name was signed thereto at his direction by a subordinate.

The orders of which appellants complain were made by the superintendent under the provision in sec. 40.30 (1), Stats. 1939, that "The state superintendent is authorized, on his own motion, by order to attach districts with valuations of less than one hundred thousand dollars to contiguous districts." This provision was inserted by the amendment of sec. 40.30 (1), Stats., by ch. 228, Laws of 1939, and by this chapter there was also added to sec. 40.30 (6), Stats., the provision that "An appeal may be taken from any decision of the said state superintendent within thirty days from date of said decision to the circuit court of any county affected." Under this provision the appeals in question were taken to the circuit court. Prior to these amendments, sec. 40.30 (1), Stats., authorized the abolition and consolidation of school districts to be ordered by town and village boards, and city councils of the municipality in which the districts were located, and as to an order so made sec. 40.30 (1), Stats., provided and still provides that,—

". . . Any person aggrieved by any order issued and recorded pursuant to the provisions of this section . . . may appeal therefrom to the state superintendent within thirty days following the issuing and recording of any such order. . . ."

Appellants contend that the provisions inserted in sec. 40.30 (1), Stats., by the 1939 amendment which author-

izes the superintendent to order the attachment of districts with valuations of less than $100,000 to contiguous districts is unconstitutional on the grounds that the mere valuation of the property within a district "does not provide a proper standard germane to the purpose of the act," and the different treatment accorded under this provision to persons by reason of the amount of such valuation within a district in which they reside, denies to appellants and others similarly situated the equal protection of the law; and that the statute involves the unconstitutional delegation of legislative power in that no standard is set up or fact expressed by the legislature upon the existence of which the superintendent is to act or required to alter or abolish and consolidate school districts. In this connection, appellants argue also that sec. 1, art. X, Wis. Const., which provides that "the supervision of public instruction shall be vested in a state superintendent and such other officers as the legislature shall direct," is violated by delegating to a constitutional administrative officer power which is beyond the scope of his duty in that under this constitutional provision his power as such officer is limited to matters pertaining to public instruction, and this limitation denies the right of the legislature to confer upon the officer the power to legislate by the establishment of school districts.

These contentions cannot be sustained in view of the established rules that the formation of school districts and the power to exercise discretion in determining whether such districts shall be altered by consolidation or otherwise is not such an exclusive legislative function as may not be delegated to the state superintendent, as well as to town boards; and that this power may be delegated without any standard whatsoever to guide in the exercise of the power delegated. Thus in sustaining a decision by the superintendent of public instruction in proceedings before him on an appeal from an order of a town board by which a school district was divided,

this court said in *State ex rel. Moreland v. Whitford,* 54 Wis. 150, 153-156, 11 N. W. 424,—

"The constitutional question as to whether such a jurisdiction could be constitutionally conferred upon this officer, is virtually disposed of by the above ruling that he is authorized to act only in a *quasi*-judicial capacity. . . . But it is sufficient that the state superintendent, on appeal from the decision of the town board altering or changing the boundaries of a school district, passes upon the matter as an original question, and has the same power and discretion in deciding whether such district should be changed, altered or divided, as the town board had in making its decision. If the state superintendent in this had judicial power conferred upon him in violation of the constitution, so has the town board; and yet no one has thought of questioning the constitutional power of such a body in such a proceeding. The state superintendent is not a court of appeals or of errors, to sit in review of the errors of the town board; but on appeal he acts in the whole matter as the board should have acted, and his decision is final. . . . We think it was eminently proper for the legislature to confer this power of final disposition of changes in school districts on this officer. It is especially within the appropriate functions of his office, and, considering the eminent ability and impartiality of the incumbent of this office in the past, as at the present time, experience has proved that such matters may well be left with him as a finality. . . . The duty of forming and altering school districts is purely municipal, administrative and ministerial, although involving the exercise of judgment and discretion, and has no respect whatever to personal or property rights. . . . The state superintendent appears to have acted in strict compliance with law and the rules of his department, and there does not appear to have been any constitutional provision violated, either in giving him such a jurisdiction or in his manner of hearing the appeal."

These conclusions were approved in sustaining, in *State ex rel. Horton v. Brechler,* 185 Wis. 599, 604–606, 202 N. W. 144, the validity of sub. (9) of sec. 39.13, Stats. 1921, which authorized an appeal to a statutory "committee on

common schools" from the failure of a town board to act on a petition to change the boundaries of a school district. The court said,—

"The principal argument made against the validity of the order of the county committee on common schools is that the committee exceeded its authority in attempting to include territory not prayed for by the petition, and because the power conferred by the statute (subs. (9), (10), sec. 39.13), and upon the state superintendent by sec. 39.01, Stats. 1921, constitutes a delegation of legislative power, and such statutes are unconstitutional. The formation of school districts, however, is not a direct legislative function. Sec. 3, art. X, of the state constitution requires the legislature to 'provide by law for the establishment of district schools, which shall be as nearly uniform as practicable.' From the very beginning of state government the power to form school districts has been conferred upon town boards—official bodies which are nearest to those who are interested in the formation of school districts. The legislature has not attempted to set up any required standard or to make the action of the town board dependent upon the existence of any facts or circumstances. The town board has been permitted to exercise its discretion and form school districts that will in its best judgment promote the cause of education. From the earliest days the appeal from the decision of the town board in such matters to the state superintendent has been authorized. In *State ex rel. Moreland v. Whitford,* 54 Wis. 150, 11 N. W. 424, the power of the state superintendent in this respect was challenged as being unconstitutional. This court there held that his power was *quasi* judicial in nature and that it did not offend against any constitutional provisions. By comparatively recent legislation the county committee on common schools was created and an appeal from the town officers acting upon a change of school-district boundaries was authorized to that body, the appeal to be tried 'in the manner, within the time and with the same result as in case of trial on appeal to the state superintendent.' The power thus conferred upon the county committee on common schools is the same as that conferred upon the state superintendent, and as there is no constitutional objection to the exercise of this

power by the state superintendent, there can be none to the exercise of the same power by the committee on common schools."

The conclusions were likewise approved in *State ex rel. Zilisch v. Auer,* 197 Wis. 284, 221 N. W. 860, 223 N. W. 123. In that connection this court quoted with approval and considered applicable to the alteration or consolidation of school districts the following statement in *Hunter v. Pittsburgh,* 207 U. S. 161, 178, 179, 28 Sup. Ct. 40, 52 L. Ed. 151,—

"Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. . . . The state, therefore, at its pleasure, may . . . expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the constitution of the United States. Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the federal constitution which protects them from these injurious consequences. The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it."

And this court then further concluded in the *Zilisch Case, supra* (p. 294),—

"Whether the boundaries of a local governmental unit like a city or a school district should be changed 'is not a question of law or fact for judicial determination, but purely a question of policy, to be determined by the legislative department.' *Whittaker v. Venice,* 150 Ill. 195, 201, 37 N. E. 240, 241. The policy outlined in sec. 40.85 of the statutes presents a

question of political expediency for the legislative department of our government."

It follows under the principles thus established ever since the decision in *State ex rel. Moreland v. Whitford, supra,* that the provision in sec. 40.30 (1), Stats., authorizing the state superintendent by his order to attach districts to contiguous districts was not an unconstitutional delegation of legislative power to that officer; and, furthermore, that the exercise of this power is a matter involving public instruction and therefore the delegation thereof to the state superintendent cannot be held to be in violation of the provision in sec. 1, art. X, Wis. Const., that "the supervision of public instruction shall be vested in a state superintendent." On the contrary the delegation of the power and the exercise thereof are consistent with that provision. Likewise, as under the principles stated above, no standard whatever need be prescribed in delegating the power in question, the absence of any other standard excepting in so far as the provision as to valuation limits the exercise of the power to districts having valuations of less than $100,000, cannot be deemed to render the statute invalid. Neither are appellants' contentions that the provision does not provide a standard which is germane to the purposes of the act, and, therefore, does not afford a proper basis for classification, material in these cases.

However, even if these matters were material, there could not be sustained appellants' contentions that by reason of the difference in treatment which can be accorded to persons under this provision as to valuation, appellants can be deprived of property without due process of law and denied the equal protection of the laws, in violation of the federal constitution. In view of the rule that a statute can be declared unconstitutional only when its repugnance to the constitution is clear and beyond reasonable doubt (*Petition of Breidenbach,* 214 Wis. 54, 252 N. W. 366; *State ex rel. Smith v. Outagamie*

*County,* 175 Wis. 253, 185 N. W. 184; *State ex rel. Fulton v. Zimmerman,* 191 Wis. 10, 210 N. W. 381), the classification under the provision in question cannot be held invalid if there can be deemed to have existed any reasonable considerations which the legislature could consider sufficient to warrant providing a different method for the consolidation of districts having valuations of less than $100,000. Such difference in the methods of consolidation may be deemed justified by such considerations as that districts with valuations of less than $100,000 are apt to be less able to properly maintain a school than districts having larger valuations; that although there may be greater need for consolidation in the case of districts having less than the specified valuation, the general statutes which heretofore authorized their consolidation were inadequate to effectuate needed consolidations because local boards were too hesitant to take advantage of the existing consolidation laws; and that to effectuate such needed consolidations the state superintendent should be authorized by the legislature to attach such districts to others on his own motion in order to improve public instruction in the state. To that end it was permissible for the legislature to conclude that districts having a valuation below the amount which it specified presumptively could not well function or even exist; and to the legislative action in this respect there are applicable the conclusions stated by this court in relation to sec. 40.85, Stats. 1927, in *State ex rel. Zilisch v. Auer, supra* (p. 294),—

"If this section or the law as it existed before this statute was enacted works an injustice to any of the citizens of the state, their forum of relief is the legislature, not the courts. The courts 'have nothing to do with the policy, wisdom, justice, or fairness of the act under consideration; those questions are for the consideration of those to whom the state has intrusted its legislative power, and their determination of them is not subject to review or criticism by this court.' *Hunter v. Pittsburgh," supra.*

Furthermore, although the treatment accorded appellants because there is applicable to their districts the method for consolidation of districts with valuations of less than $100,000 and that differs from the method accorded to districts having greater valuations, it is well established that the alteration or abolition of school districts in such manner and through such instrumentalities as the legislature prescribes is not the taking of property nor does it deprive any person of his property within the meaning of the constitutional inhibitions in these respects; and that statutes in authorizing such changes in school districts do not deny equal protection of the laws or due process of law. As this court has held in the course of many years,—

"The duty of forming and altering school districts is purely municipal, administrative and ministerial, although involving the exercise of judgment and discretion, and has no respect whatever to personal or property rights" (*State ex rel. Moreland v. Whitford*, 54 Wis. 150, 155, 11 N. W. 424);

"There is no vested inviolable right in school-district boundaries or government, whatever there may be in its property. *Mount Pleasant v. Beckwith*, 100 U. S. 514, 525; *School Directors of Ashland v. Ashland*, 87 Wis. 533" (*State ex rel. Joint School District No. 2 v. Sweeney*, 103 Wis. 404, 406, 79 N. W. 420);

"Sec. 40.85 [relating to the detachment of land from school districts] of the statutes does not deny equal protection of the laws or due process of law when it authorizes changes in the boundaries of school districts. Changing the boundaries of a school district 'is not a taking of the property, nor does it deprive any person of his property.'" (*State ex rel. Zilisch v. Auer*, 197 Wis. 284, 293, 221 N. W. 860, 223 N. W. 123); and

"Under the statute [sec. 40.85] no officer is authorized to exercise any discretion with respect to the detachment of the territory. Matters which affect the equities of the situation with reference to the various districts and parties are therefore immaterial. If the petition is in compliance with the law, the matter is at end and the territory must be detached. It

is likewise considered that none of the constitutional rights of the parties are in any way invaded or involved. The legislature quite apparently has one view of the rights of the parties in respect to detachment of territory from school districts and the school authorities have another. The legislature in this field has very large powers. When it speaks and its mandate is complied with, the legal consequences prescribed must ensue and no officer can be permitted to defeat the will of the legislature upon equitable grounds." (*State ex rel. Joyce v. Deneen,* 201 Wis. 646, 651, 231 N. W. 174.)

Appellants also contend that if the power granted to the superintendent by the amendment of sec. 40.30 (1), Stats., in 1939 is *quasi* judicial (as was held in the *Whitford Case, supra*) then the amendment is invalid because it fails to provide for a hearing. No notice thereof was given in the cases at bar until after one of the subordinates of the superintendent had recommended that a proposed order be made by the superintendent; and there was no hearing whatsoever granted appellants. In this connection they consider it significant that under sec. 40.30 (2), Stats., whenever the consolidation of a school district is contemplated to be made by a municipal board, five days' notice in writing is expressly required to be given of the time and place where such changes are to be decided upon; but that there is no provision requiring any such notice when such action is to be taken by the superintendent. Appellants' contention cannot be sustained. For the reasons stated above, no property rights on the part of the districts or any of the appellants are considered involved in the consolidation of such districts. Consequently, neither the absence of a statutory provision requiring notice to be given of a hearing before the superintendent, nor the absence of any such notice to appellants renders the statute unconstitutional or the orders under review invalid on the ground of a want of due process. In addition there is also in point the court's statement in *Antelope Valley Union High School Dist. v. McClellan,* 55 Cal. App. 244, 247, 203 Pac. 147,—

"The establishment of a system of public instruction throughout the state is a governmental function, as to which the state reserves to itself the means of giving it complete effect and full efficiency without regard to the wishes of the people 'deficient in proper appreciation of its advantages.' 2 Cooley, Taxation (3d ed.), p. 1299. Possessing such power to create, alter, or abolish districts, the function, governmental in its nature, may be exercised immediately by the legislature or by subordinate bodies to whom the matter is delegated, subject to such conditions, and without notice, as it may impose. In the absence of constitutional restrictions, and there are none affecting this case, the question as to whether boards of supervisors may exercise such delegated power without notice, is a question solely for the determination of the legislature, and in its wisdom it has not required the giving of notice. Indeed, our attention is directed to no authority wherein it is held that the inhabitants of an intermediate school district are entitled to notice of a hearing upon the proposition as to whether the territory thereof shall be annexed to a high-school district."

Neither is sec. 40.30, Stats., void as appellants contend, because of uncertainty in that the power in question, which is delegated to the superintendent, is the same as the power that is granted also to towns and similar municipal boards. Appellants argue that because of this dual grant of power, conflicts and confusion will result if conflicting orders are made by the superintendent and by a board in relation to the same districts. The mere grant of power which might possibly be exercised concurrently, and the possibility of conflict or confusion if the superintendent and also a board should undertake to act concurrently does not render the provisions in the statute uncertain and therefore unconstitutional. There is no uncertainty or conflict as to the meaning of its provisions. At most there might arise, in the first instance, a conflict if a board and the superintendent should act concurrently, but even then under the statute the board's action would be subject to and subordinate to the superintendent's order on an appeal from the board's order. At all events no such conflict or confusion has arisen in the cases

at bar, and none may ever arise. If and when it does arise, it will be time enough to solve the problem. But until some party has been aggrieved by such dual action, no question is presented in that respect which need be determined. *Wisconsin Labor R. Board v. Fred Rueping L. Co.* 228 Wis. 473, 279 N. W. 673.

Appellants contend that the superintendent's orders are invalid because he failed to make a personal decision in that he delegated the matters to his subordinate, Merritt, who made a report and recommendation upon which the superintendent relied without considering all facts that appellants allege in their complaints; and also because a subordinate drafted the orders and affixed the superintendent's signature at his direction. As was held in *Joint School Dist. No. 7 v. Wolfe,* 12 Wis. *685, the superintendent's power under the statutes to make an order in relation to the consolidation of school districts must be exercised by him in person and not by a subordinate. However, the rule that requires an executive officer to exercise his own judgment and discretion in making an order of such nature does not preclude him from utilizing, as a matter of practical administrative procedure, the aid of subordinates directed by him to investigate and report the facts and their recommendation in relation to the advisability of the order, and also to draft it in the first instance. *Inhabitants of West Springfield v. Mayo,* 265 Mass. 41, 163 N. E. 653; *United States v. Standard Oil Co. of California* (D. C.), 20 Fed. Supp. 427, 448; *People's United States Bank v. Gilson* (C. C.), 140 Fed. 1, 5; *Lewis Publishing Co. v. Wyman* (C. C.), 152 Fed. 787; *United States v. Chemical Foundation,* 272 U. S. 1, 14, 47 Sup. Ct. 1, 6, 71 L. Ed. 131; *State ex rel. Roberts v. Watson* (Tenn.), 39 S. W. 536, 538. It suffices that the judgment and discretion finally exercised and the orders finally made by the superintendent were actually his own; and that there then attaches

thereto the presumption of regularity in order to effectuate the intent manifested thereby. The superintendent's omission to consider the facts and objections, which were subsequently alleged in the complaints filed on appellants' appeals to the circuit court, would not render the superintendent's orders invalid. Neither would the failure on his part to anticipate, as appellants allege, every consideration which they now raise, be inconsistent with the exercise of a good-faith discretion on his part. Courts must indulge in every *prima facie* presumption in favor of the good faith of the superintendent in making such orders in the discharge of his official duties; and have no right to interfere with the exercise of the judgment and discretion committed by the legislature to such an official. *State ex rel. Davern v. Rose,* 140 Wis. 360, 122 N. W. 751. In so far as such matters as the drafting of the order and the affixing of the superintendent's signature at his direction by a subordinate are concerned, there are applicable the principles stated in *State ex rel. Skrainka Construction Co. v. Reber,* 226 Mo. 229, 237, 126 S. W. 397, as follows:

"An officer to whom a discretion is intrusted by law cannot delegate to another the exercise of that discretion, but after he has himself exercised the discretion he may, under proper conditions delegate to another the performance of a ministerial act to evidence the result of his own exercise of the discretion. . . . In *Porter v. Paving Co.* 214 Mo. 1, 112 S. W. 235, it was held that the signature of the mayor, which the law required to be subscribed to an ordinance to show that it was approved by him, might under the mayor's direction, be written by his secretary."

As the court said in *Kittelson v. Dettinger,* 174 Wis. 71, 75, 182 N. W. 340, in respect to an order consolidating school districts made by a town board but not signed by its members,—

"It would doubtless have been better practice if the individual members had signed the order, but since the statute

does not so prescribe we are disposed to hold that, if it was an irregularity, it was not jurisdictional, and not fatal to the subsequent proceedings for the organization of the district."

Appellants also contend that the trial court erred in concluding that they were not entitled to a trial *de novo* at which all matters involved in the questions of consolidation should be reconsidered and redetermined by the court. They claim that the legislature intended, in providing that an "appeal" may be taken from the superintendent's decision (sec. 40.30 (6), Stats. 1939), that upon such an appeal all facts material to the questions involved in the propriety of the superintendent's order in the first instance were to be open for consideration by the court, and that, therefore, the court then occupied the same position and had the same power in respect to such orders as were granted to the superintendent by the statutes. The term "appeal," as used in sec. 40.30 (6), Stats., without specifying the nature of the proceedings thereon does not imply a trial *de novo*. In authorizing an appeal to a court from an administrative officer's determination, the term is used in the restricted sense that the court is "to exercise its appropriate judicial power in respect to acts done by the administrative tribunal in excess of its power or in the unlawful abuse of that power." *Moynihan's Appeal,* 75 Conn. 358, 53 Atl. 903; *Board of Finance v. First Nat. Bank,* 71 Ind. App. 290, 124 N. E. 768. If the legislature intended to provide, as appellants claim, for a trial by the court of all matters involved in the propriety of the superintendent's orders, so that the court's power would be as broad as that of the superintendent in ordering the consolidation—(instead of intending but such a review of the questions of jurisdiction and abuse of power as could be had on *certiorari,* which was held proper to review the superintendent's order on an appeal from a town board's order,— *State ex rel. Foster v. Graham,* 60 Wis. 395, 19 N. W. 359),— then the provision authorizing the appeal would be in viola-

tion of the rule that prohibits the exercise of legislative, executive or administrative functions by the courts. As we said in *United Shoe Workers, etc., v. Wisconsin L. R. Board*, 227 Wis. 569, 574, 575, 279 N. W. 37,—

"While there has been a departure in many ways from the doctrine of the separation of powers, it has not yet been held that a court can exercise the powers conferred upon an administrative agency and substitute its judgment for the judgment of the administrative agency. This is so clear that it requires neither argument nor citation of authority to support it."

To such a trial *de novo* by the court of all matters and questions involved on a proposed consolidation, there would be applicable the conclusions stated in holding a similar delegation of power invalid in *In re Incorporation of Village of North Milwaukee*, 93 Wis. 616, 618, 67 N. W. 1033. The statute under consideration purported to authorize the court to order the incorporation, as a village, of territory described in a petition for such incorporation if the court, upon a hearing, was satisfied as to the existence of certain matters, including that "the lands embraced in such territory or any part thereof ought justly to be included in the proposed village; that the interest of the inhabitants will be promoted by such incorporation;" and the statute also provided that by the order the territory described in the application "may be enlarged or diminished by such court from the boundaries specified in such application, as justice may require." In holding the statute unconstitutional the court said (pp. 619, 622–624),—

". . . the claim of the appellants is that these powers attempted to be conferred upon the circuit court are legislative and political powers, and that they cannot, under our constitution, be conferred upon a court. . . . There are a number of the questions upon which the court is required to pass when making the preliminary order of incorporation under sec. 861, R. S., which are unquestionably pure questions of

fact. . . . But the other questions upon which the court is required to pass are of a different nature, and we see no escape from the conclusion that in passing upon and deciding them the circuit court determines legislative or political questions. These questions are (1) whether the lands embraced in the petition ought justly to be included in the village, and (2) whether the interest of the inhabitants will be promoted by such incorporation. Furthermore, the provision authorizing the court to enlarge or diminish the boundaries of the village as justice may require seems to us equally an exercise of legislative power. It is vigorously claimed by the respondents that these last-named questions are in truth questions of fact only, but it seems to us that this claim is utterly untenable. There is no proper sense in which they can be said to be questions of fact. They are rather ultimate conclusions from all the facts. Given all the facts which the legislature require,—the area, the population, the census, the map, the notices,—and does the order calling an election follow? By no means. The circuit court, in addition to determining these facts, must then say whether, in its judgment, it is best that there should be a village. This is no true question of fact. It is a mental conclusion, which may be based alone on the previous bias of the mind of the presiding judge as to the expediency of a small settlement assuming corporate powers and obligations. A circuit judge could prevent the formation of a single new village in his entire circuit, notwithstanding every requisite condition of fact were present, simply because he believed that it was really best for small communities to remain unincorporated. . . . The sum and substance of the law is this: Villages may be incorporated if the circuit court thinks best. This amounts to nothing more or less than the vesting in the circuit court of the powers of a third house of the legislature, which must be exercised in the affirmative before a village can exist. . . . The question as to whether incorporation is for the best interest of the community in any case is emphatically a question of public policy and statecraft, not in any sense a judicial question; and in attempting to submit that question to the decision of the circuit court the legislature has undoubtedly done that which the constitution forbids."

These conclusions would be equally applicable to the delegation of power which would be necessary to determine the matters alleged in appellants' complaints, and which they contend the legislature intended should be exercised by the court upon their appeal. No such unconstitutional result will follow in respect to the provision as to the appeal authorized by sec. 40.30 (6), Stats. 1939, when construed to mean that the review on appeal is limited to the questions as to whether the superintendent acted within his jurisdiction and in the exercise of good faith. Consequently, in construing the provision there is applicable the rule that "if a law is open to two constructions, that construction which will save it from condemnation will be adopted in preference to one which renders it unconstitutional" (*Petition of Breidenbach, supra*) ; and it follows that the trial court's ruling in this respect must likewise be sustained.

*By the Court.*—Order affirmed in each case.