OAK PARK SCHOOL DISTRICT No. 2 OF THE TOWN OF WESCOTT and others, Appellants, vs. CALLAHAN, State Superintendent of Public Instruction, Respondent.

*October 13—November 14, 1944.*

For the appellants there was a brief by *Eberlein & Eberlein* of Shawano, and oral argument by *M. G. Eberlein.*

For the respondent there was a brief by the *Attorney General* and *W. E. Torkelson,* assistant attorney general, and oral argument by *Mr. Torkelson.*

BARLOW, J.   Sec. 40.30, Stats., provides for the creation, alteration, consolidation, and dissolution of common school districts, and authorizes town and village boards, and councils of cities of the second, third, and fourth class to create, alter,

consolidate, or dissolve school districts by their order, either upon petition by an elector or upon their own motion. In the instant case the town board proceeded upon its own motion. Provision is also made for an appeal to the state superintendent by an aggrieved person from the action or refusal to act on the part of the town board. The statute further provides, sub. (1):

"The state superintendent is authorized, on his own motion, by order to attach districts with valuations of less than one hundred thousand dollars to contiguous districts."

It is undisputed that Oak Park School District No. 2 had a valuation of less than $100,000 at the time the state superintendent entered the order dissolving it and annexing the territory to Ainsworth School District No. 1. Before the municipal board can act it is necessary that they give at least five days' notice, in writing to the clerk of each district to be in any way affected thereby, of the day, hour, and place it will be to decide upon the proposed changes. The state superintendent is not required to give any notice prior to action on his part.

Appellants contend that when the town board gave notice of the meeting to consider the question of altering Oak Park School District No. 2, on February 28, 1944, it acquired jurisdiction of the subject matter and that, the jurisdiction of the state superintendent being concurrent with that of the school district, he had no authority to act. From the time that Wisconsin became a state up to and including the present time, no school district could be created or altered in towns, villages, and cities of the second class or under except by action of the municipal body. This was also true of the dissolution of school districts until 1939, when the legislature, by ch. 228, Laws of 1939, made an additional provision authorizing the state superintendent, without notice, to attach school districts of a valuation of less than $100,000 to contiguous districts,

which in effect constituted a dissolution. The right of the municipal authorities to dissolve school districts was not changed. The legislature also provided the procedure to be followed by the officials of the municipal unit or units in their action in order to acquire authority to act. It required the municipal board to "give at least five days' notice, in writing, to the clerk of each district to be in any way affected thereby of the day, hour, and place it will be to decide upon the proposed changes." Sec. 40.30 (2), Stats. It also provided that notice should be given upon the filing of a petition by an elector or upon their own motion.

On February 28, 1944, the town board of the town of Wescott gave notice of a meeting to consider a proposed alteration of Oak Park School District No. 2 of said town, fixing March 8, 1944, as the date of meeting. Between the date of the notice and date of the meeting, to wit: March 3, 1944, the state superintendent entered an order dissolving the Oak Park school district and annexing the territory to Ainsworth School District No. 1 of the same town. The giving of the notice by the municipal board constituted the first step of its authority to act. While it cannot well be said that this constituted taking jurisdiction as it is known in judicial procedure, nevertheless it is the beginning of an orderly process to carry out the authority delegated to the municipal board by the legislature relative to school districts. The failure to give this notice of necessity constitutes a defect in procedure which deprives the board of the authority to act. *State ex rel. Hebert v. Carlson* (1912), 150 Wis. 584, 137 N. W. 746. In other words, it is jurisdictional under the common understanding usually applied to the word "jurisdiction."

The procedure outlined gives the municipal board the right to determine the interests involved and provides an appeal to the state superintendent. This is a reasonable and logical procedure. It is one that has been followed over a long period of years, and with apparent success as very few changes have

been made in the law. It recognizes home rule or local government, and at the same time protects state-wide interests. When the legislature amended the law in 1939, it recognized that the general statutes which left consolidation of school districts to local municipal boards were inadequate to effectuate needed consolidation because local boards were too hesitant to take advantage of existing consolidating laws. *School Dist. v. Callahan* (1941), 237 Wis. 560, 297 N. W. 407. At the same time, when it failed to take away the right of the municipal boards to dissolve school districts, it recognized the fine contribution made to local government by competent and interested persons and the contribution made to the development of our school system over a period of years. It can properly be said that concurrent authority was granted to the municipal board and the state superintendent with reference to the dissolution of this particular school district, but the legislature did not say that the state superintendent could act after the municipal board had elected to do so. This court held that the state superintendent has authority to act where the municipal board fails or refuses to do so, but has left the question undecided as to what the result would be if both attempted to act at the same time. (*School Dist. v. Callahan, supra.*)

To permit the state superintendent to attach school districts to a contiguous district after the municipal board has exercised its authority to act is to say that the legislature intended to deprive the municipal board of any authority over the subject matter except as the state superintendent may permit. If this is true, there was no purpose in leaving with municipal boards authority to act on school districts having a valuation of less than $100,000. The legislature did not see fit to revoke this right. It did not deprive local authorities of the right to correct school-district conditions if they are ready and willing to do so. The purpose of the amendment was to give the state superintendent such authority only when

and if the municipality fails or refuses to act. It cannot be said that the board failed or refused to act here. The machinery of the law was placed in motion. Notice of the meeting was dated February 28th and the meeting was called for March 8th, which was the earliest date that would reasonably permit service on the parties in interest. They followed the procedure provided by statute, and had a right to do so. It is considered that the municipal board having given notice of its intention to act on the question of altering the boundaries of Oak Park School District No. 2, of the town of Wescott, Shawano county, Wisconsin, the state superintendent had no authority to make an order attaching the same to a contiguous district, and that his order under date of March 3, 1944, is null and void.

The conclusion reached in this case makes it unnecessary to consider other questions presented.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.

ROSENBERRY, C. J. (*dissenting*). I find myself unable to concur in the opinion in this case for the following reasons:

Sec. 1, art. X, of the constitution provides: "The supervision of public instruction shall be vested in a state superintendent and such other officers as the legislature shall direct; and their qualifications, powers, duties and compensation shall be prescribed by law. . . ."

Sec. 3, art. X, "The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable. . . ."

The formation of school districts is not a direct legislative function and authority to form such districts may be vested in the town board. *State ex rel. Horton v. Brechler* (1925), 185 Wis. 599, 202 N. W. 144.

By sec. 40.30, Stats., the town and village boards, councils of cities of the second, third, and fourth classes are authorized to create, alter, consolidate, or dissolve school districts.

Sec. 40.30 (2) provides: "Whenever such alteration, creation, consolidation or dissolution shall be contemplated, the municipal board shall give at least five days' notice, in writing, to the clerk of each district to be in any way affected thereby of the day, hour and place it will be to decide upon the proposed changes. . . ."

While notice must be given, the statute makes no provision for a hearing. Appeals may be taken from the determination of the municipal board to the state superintendent. By a subsequent amendment the statute provides, sub. (1):

"The state superintendent is authorized, on his own motion, by order to attach districts with valuations of less than one hundred thousand dollars to contiguous districts."

On review of the state superintendent's order, the only questions before the court are whether the superintendent acted within his jurisdiction and whether he acted in good faith. *School Dist. v. Callahan* (1941), 237 Wis. 560, 297 N. W. 407.

As I understand the decision, it is now held that when a town board serves the notice provided for in sec. 40.30 (1), Stats., the power of the state superintendent to act upon his own motion is suspended although the statute does not so provide. By so holding the court creates a limitation upon the power of the state superintendent which the legislature might have created but did not. This it seems to me is pure legislation by court decision. While it is true as held in *State ex rel. Hebert v. Carlson* (1912), 150 Wis. 584, 137 N. W. 746, that a town board may not proceed without giving the required notice, that in no way affects the power conferred upon the state superintendent.

In the opinion in this case it is said:

"It can properly be said that concurrent authority was granted to the municipal board and the state superintendent with reference to the dissolution of this particular school district, but the legislature did not say that the state superintendent could act after the municipal board had elected to do so."

The legislature placed no limitation whatever upon the power of the state superintendent to act at any time he saw fit. Having conferred upon him this broad power it did not need to say that the superintendent could act after the municipal board had given notice of its intention to act and before it had entered an order. The giving of the notice by the town does not constitute action on its part,—that is an exercise of its statutory power. It is merely a condition precedent to the exercise of its powers at that time and place when and where it acts. If the town board had acted, that is, had entered an order attaching territory to contiguous school districts in such a way that the school districts would each have a valuation of more than $100,000, the state superintendent then would have had no power to act. The only limitation upon his power is that he must deal with a district having a valuation of less than $100,000.

That it is within the competence of the legislature to confer such broad discretionary power as is conferred upon the state superintendent by sec. 40.30, Stats., has been distinctly held by this court. *State ex rel. McKenzie v. Brown* (1921), 174 Wis. 498, 182 N. W. 602.

The statute under consideration in that case conferred upon the state superintendent power in the exercise of his discretion to determine whether a union free high school district should come into existence, a power much more important so far as the educational interests of the state are concerned, than is the power conferred upon him by sec. 40.30 (1), Stats.

I am of the opinion that the judgment should be affirmed. The idea that a municipal board by giving a notice that it proposes to act in a certain matter, thereby deprives a constitutional state officer of a power to act, conferred upon him by the legislature, the statute containing no such provision, is to my mind a novel proposition. If the power conferred upon the state superintendent is too broad, it should be limited by the legislature, not by the court.

I am authorized to say that Mr. Justice FRITZ and Mr. Justice WICKHEM join in this dissent.