338

[No. 32465.   Department Two.   September 22, 1953.]

JAMES W. ORKNEY, *Appellant*, v. VALLEY CEMENT COMPANY *et al., Respondents and Cross-appellants.*[1]

*Cheney & Hutcheson* and *Lauren W. Dobbs,* for appellant.

*Walter V. Swanson* and *Douglas A. Wilson,* for respondents and cross-appellants.

SCHWELLENBACH, J.—During 1948, there were two competing cement companies in Yakima; Valley Cement Company, Inc., hereinafter called "Valley," and Insul Block and Concrete Manufacturing Company, Inc., doing business as Pioneer Concrete Company, hereinafter called "Pioneer." Eugene J. Auve was president of Valley, and J. W. Orkney was president of Pioneer. Because of the unsatisfactory

[1]Reported in 261 P. (2d) 114.

testimony of both Auve and Orkney, we shall, in relating the facts, confine ourselves to the written documents introduced in evidence, supplemented by the testimony of the above-mentioned witnesses where such testimony appears to be uncontradicted.

In the fall of 1948, Mr. Orkney approached Mr. Auve with the view of merging the two companies. This appeared rather attractive to both of them. Valley had financial stability, and Pioneer had a gravel pit and some trucks. However, Pioneer was in quite serious financial difficulties. It had several creditors, some of whom were threatening to sue, and the R.F.C. held a $60,000 mortgage on its equipment, which it, in all probability, would foreclose.

Notwithstanding these facts, and as a result of the negotiations, an agreement was entered into on November 26, 1948, between the two companies, acting through their respective officers, to merge into a new corporation to be known as Valley Pioneer Cement Company. There is no question but that the agreement to merge was entered into in good faith. The agreement provided for the contribution by each company of certain assets and cash, and that the new company should issue fifty-one per cent of its stock to Valley and forty-nine per cent to Pioneer. Under the terms of the agreement, Pioneer was required to contribute its cement plant and its sand and gravel plant, and all property used in connection therewith; $9,800 worth of inventory, consisting of sand, gravel, cement, and crushed rock; and to assign its accounts receivable to the new corporation to the extent of $4,900.

On the same day, November 26, 1948, a supplementary agreement was entered into. It provided, in part, that Auve would undertake the active management as of December 1, 1948. It also provided that, in lieu of the assignment of $4,900 of accounts receivable, Pioneer could cause certain of its individual stockholders to pay $6,400 in cash to the new corporation, and that, upon the payment of the $6,400 by the individual stockholders, stock to that extent, which would otherwise be issued to Pioneer, would be issued to the

individual stockholders making such payments. The supplementary agreement also provided:

"5. In the event Pioneer shall for any reason be unable to or fail or refuse to comply with the terms and conditions of the main agreement or the terms and conditions of this agreement, and particularly the foregoing paragraph, or if it should be unable or fail or refuse to fully pay or settle with any or all of its promissory note and open account creditors, or in the event of an assignment for the benefit of creditors, the appointment of a receiver, or bankruptcy of Pioneer, at the option of Valley this agreement may be cancelled and terminated, and Pioneer shall not be entitled to the issuance of any stock in the new corporation. The new corporation may be liquidated and the parties restored as nearly as possible to the positions they occupied before this agreement was entered into between them."

This might be a good place to relate that, commencing December 1st, Auve did not draw any salary as president of Valley, but that, during December, January, and February, he drew a monthly salary of six hundred dollars from Valley Pioneer, as its president.

Also, on the same day, November 26, 1948, Auve wrote to Orkney and Pioneer that, in connection with the operations of the new corporation, it would undertake to collect the accounts receivable of Pioneer, as Pioneer's agent, and that such funds would be applied in reduction of the indebtedness of Pioneer.

December 2, 1948, the following assignment was entered into, signed by Insul Block and Concrete Manufacturing Company by Joseph E. Ditter, its vice-president.

"ASSIGNMENT

"IN CONSIDERATION of the sum of THREE THOUSAND and no/100 DOLLARS ($3,000.00) this day loaned and advanced by J. W. Orkney to the undersigned, Insul Block and Concrete Manufacturing Company, a corporation, doing business as Pioneer Concrete Company, receipt whereof is hereby acknowledged, the said undersigned corporation does hereby transfer and assign to said J. W. Orkney all accounts receivable now owing to the undersigned corporation, together with the right to collect and receive the same, by legal proceedings or otherwise, and together with the right to claim, receive, collect and retain the said sum of money

out of the first monies paid to or for the undersigned corporation out of its existing accounts receivable; and this assignment is given as security for the repayment of said loan together with interest thereon at the rate of six percent (6%) per annum from the date hereof until paid."

The same day, a similar assignment was made to Orkney and Ditter in the amount of $6,400. This was signed by J. W. Orkney as president of Insul.

Apparently, $9,400 was collected by the new corporation from the accounts receivable of Pioneer. Three thousand dollars was paid to Orkney, and $6,400 was placed in a special account for the benefit of Orkney and Ditter.

We now come to December 31, 1948. An Agreement of Termination was entered into, signed by both corporations through their officers. It recited that Pioneer had been unable to satisfy its creditors, and that one creditor had instituted legal proceedings seeking the appointment of a receiver for Pioneer. It provided that the agreements entered into on November 26, 1948, were canceled and terminated.

The same day, a letter was written by Valley Pioneer, through Auve, its president, addressed to Pioneer. It advised Pioneer that the new corporation intended to proceed in business with the assets transferred and to be transferred to it by Valley Cement Company, but would still be interested in the acquisition of Pioneer's property. (At no time, until then or later, did Valley ever transfer any of its assets to the new corporation.)

Also, on December 31st, Orkney and Ditter wrote a letter to Valley Pioneer, which stated:

"Valley Pioneer Cement Company     Yakima, Washington
Yakima, Washington     December 31, 1948
Gentlemen:

"We acknowledge your offer to return to us the amount of moneys which we have deposited with you, pursuant to the agreement between Valley Cement Company and Pioneer Concrete Company, executed November 26, 1948, tender back being by reason of the cancellation of that agreement by the parties thereto.

"However, it is our desire to individually invest these

funds with you in return for your stock taken at par value. We offer to leave this money with you in return for such stock at par value, and would appreciate your advice in that regard.

> "Yours very truly,
> [signed] J. W. Orkney
> [signed] J. A. Ditter"

There was introduced in evidence the "MINUTES OF FIRST CORPORATE MEETING AND MEETING OF DIRECTORS VALLEY PIONEER CEMENT COMPANY," held December 31, 1948. According to the minutes, Auve was elected president and Orkney, vice-president. It was announced that the articles of incorporation had been approved by the secretary of state. The president announced that sufficient funds had been paid into the corporation so that it had the required five hundred dollars in cash in order to commence business. The president announced the cancellation of the agreement between Valley and Pioneer, but also expressed the view that the new corporation should continue in business, proceeding only with the assets to be transferred to it by Valley. This was unanimously approved by the directors. The above-quoted letter of Orkney and Ditter was read, and the directors unanimously authorized the issuance of the stock to Orkney and Ditter. The stock books had not been printed at the time, but on January 5, 1949, two certificates of stock, each representing thirty-two shares, were issued to Orkney and Ditter. This was all of the stock ever issued by the new corporation, and its total assets consisted of the $6,400 paid by Orkney and Ditter.

Also on December 31st, Valley Pioneer, through its president, Auve, wrote to Orkney and Ditter, acknowledging receipt of their communication of that date and advising them that the directors had accepted their offer and had authorized the issuance of stock to them. (Both Orkney and Ditter were present at the meeting, as directors.)

The new corporation continued to operate during January and February, using some of the facilities of Valley and some of the inventory of Pioneer. It operated at a loss. Finally, on March 7, 1949, when the original fund of $6,400 had

dwindled to $2,019.25, due to loss of operation and $1,800 salary paid to Auve, Auve, as president of Valley Cement Company, wrote the following letter:

"Mr. J. W. Orkney                                    March 7, 1949
President, Insul Block &
    Concrete Manufacturing Company
16 North Second Street
Yakima, Washington
"Dear Mr. Orkney:

"Due to the many delays in closing the proposed acquisition of the Insul Block and Concrete Manufacturing Company equipment from the R. F. C., and also because of the litigation now in progress, we are withdrawing all offers that we may have made in the past. We have no further interest in the equipment.

"Thanking you for your cooperation, we remain   . . . "

Later a receiver was appointed for Pioneer, and the R.F.C. foreclosed its mortgage.

May 8, 1950, Valley Pioneer Cement Co., by J. W. Orkney, issued a check to J. W. Orkney in the amount of $2,019.25. The same day, Orkney issued his personal check to Ditter in the amount of $1,009.62.

July 14, 1950, Valley Pioneer Cement Company, by James W. Orkney, its vice-president, assigned to James W. Orkney the company's claims of indebtedness against Valley and Auve and wife.

Thus ends the short but interesting career of Valley Pioneer Cement Company, a corporation.

This action was commenced July 19, 1950. The first cause of action was for $2,190.28, the remainder due of the $3,200. (The plaintiff had credited himself with $1,009.62, half of the $2,019.25 remaining.) This was on the theory of implied contract, plaintiff contending that the defendants were unjustly enriched. The second cause of action was for conversion of crushed rock, cement, sand, gravel, etc., of the value of $1,190.32, and of accounts receivable in the sum of $479.44.

At the trial, Orkney testified that the assignment to him of July 14, 1950, was for the benefit of Valley Pioneer, and not for his own personal benefit. Auve testified that accounts receivable due the new corporation in the sum of $479.44

had been collected and such sum was retained by Valley. At the close of all of the testimony, the court dismissed Mr. and Mrs. Auve as parties defendant.

The jury found for the defendant as to the first cause of action and for the plaintiff in the sum of $479.44 as to the second cause of action. The plaintiff appeals and defendant cross-appeals.

The assignments of error are that the court erred in dismissing the action as to Auve and wife, and in entering judgment in favor of defendant as to the first cause of action.

We feel from an examination of the record, that the trial court was justified in dismissing the action as to Mr. and Mrs. Auve.

In his brief, appellant contends that he should recover as a third party beneficiary. This issue was not presented to the trial court, and was first raised on appeal. We have many times held that a matter not presented to the trial court will not be considered here for the first time. *Lake Air, Inc. v. Duffy,* 42 Wn. (2d) 897, 256 P. (2d) 301.

The question of unjust enrichment was presented to the jury under an instruction to which no error is assigned. That question was decided adversely to appellant by the jury.

It is undisputed in the record that the sum of $479.44 in accounts receivable, due to Valley Pioneer, were collected by Valley Pioneer, and that when Valley withdrew from the new corporation, it took that sum with it. Valley holds the sum of $479.44 in trust for Valley Pioneer, and appellant, as assignee for the benefit of Valley Pioneer, by the verdict of the jury, is entitled to judgment in that amount. The cross-appeal, as to the second cause of action, is without merit.

Finally, appellant contends that substantial justice has not been done. We feel that the jury, in denying recovery as to the first cause of action, and in awarding recovery in the amount of $479.44 in the second cause of action, did substantial justice between the parties. It is very evident, from the verdict, that its members were fully aware of everything that had transpired. It apparently was in the

jury's mind that the parties involved in this litigation should have taken heed of the Biblical phrase, "For we brought nothing into this world, and it is certain we can carry nothing out."

The judgment is affirmed.

GRADY, C. J., HAMLEY, DONWORTH, and FINLEY, JJ., concur.

November 2, 1953. Petition for rehearing denied.