[No. 38240.   Department One.   May 26, 1966.]

CEMENT DISTRIBUTORS, INC., *Respondent,* v. WESTERN AGGREGATES *et al., Appellants.*\*

*Williams, Lanza, Kastner & Gibbs,* by *Joseph J. Lanza,* and *W. Morgan Johnson,* for appellants.

*Short, Cressman & Cable* and *John O. Burgess,* for respondent.

HILL, J.—This was an action for damages for breach of a contract for hauling. The plaintiff's (Cement Distributors. Inc.) contention was that it was not permitted by the de-

\*Reported in 414 P.2d 789.

fendant (Western Aggregates, Inc.) to haul the amount of concrete aggregates or other material provided for in the contract, *i.e.*, a minimum of 200,000 yards during the life of the contract (2 years).

The defense was that the contract had been abandoned by the parties after something more than 80,000 yards had been hauled.

■ There was evidence, mostly negative in character, from which such an inference could be drawn. It is conceded that the contract was never terminated or abandoned by express agreement. Basically the defendant's contention is that an inference of abandonment should be drawn because the officers of the plaintiff did not specifically and continuously demand that the defendant comply with its contract. The trial judge, however, was not compelled to draw such an inference; and there was substantial evidence to support his finding that there was no abandonment of the contract by the plaintiff.

The situation between the parties requires some explanation. During the course of the contract both the defendant and North Star Sand and Gravel Corporation,[1] which produced most of the aggregates for the defendant became financially involved. They were rescued from impending insolvency by Albert L. LaPierre, who put more than a quarter of a million dollars of new capital into the two corporations. He paid some $25,000 due the plaintiff for hauling that it had done; for another $15,000 the equity in five dump trucks was acquired from a corporation in which the owners of the defendant corporation were also the principal stockholders.

The contract provided that the plaintiff would do the hauling "in trucks known as Bottom Hopper Equipment." LaPierre objected to the use of this type of equipment for delivering aggregate for stock-piling purposes. An officer

---

[1]Western Aggregates, Inc., with whom the plaintiff had contracted was thereafter merged with North Star Sand and Gravel Corporation, and the latter corporation is the substituted defendant in this case against which the judgment runs.

■

of the defendant testified that he was told by LaPierre, "that dump trucks would have to replace the bottom operated equipment because it was more economical."

Whatever may have been the reason, the defendant gave no more hauling to the plaintiff after November 1961.

Its officers made no formal demand that the plaintiff be permitted to do the hauling. The plaintiff concededly had trucks available at all times to do any hauling that might be required under the contract.

The trial court correctly pointed out that the plaintiff was not required to complain to the defendant regarding its failure to request the plaintiff's services in the hauling of aggregate or other material; and that it was the defendant's responsibility (and had been its custom) to order the services of the plaintiff when they were desired.

Based on substantial evidence, the trial court found that there was no abandonment of the contract by the plaintiff. Since Hesperian Orchards,[2] it has been made abundantly clear that we do not interfere with the findings of fact made by the trial court if there is substantial evidence to sustain them.

In arriving at the damages, the trial court found that the respondent, which was guaranteed 200,000 yards of material to be hauled during the 2-year life of the contract, was short 115,626 cubic yards under that guarantee. The trial court applied the lowest rate to which reference was made in the contract, i.e., 60 cents a yard (and no one suggests that any lower rate would have been applicable to any hauling under the contract). This amounted to $69,375.60. It was conceded that this amount should be reduced by such amounts as the plaintiff saved by not having to perform the contract.

The trial court found:

That if plaintiff had been permitted to haul the quantity of material specified in its contract it would have expended as direct costs 61.58% of the gross income, which percentage represents the following costs: repairs

---

[2]*Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

and maintenance of truck equipment, tire costs, drivers' wages, drivers' fringe benefits, workmen's compensation, fuel, and state business and occupation tax. That in addition if plaintiff had been allowed to perform its contract it would have been required to pay license fees and liability insurance which would equal 5.2% and 5.5%, respectively, of gross income. That although these items were prepaid by the plaintiff it could or should have been relieved of these expenses when its trucks were not in use.

That from the gross income of $69,375.60 which plaintiff would have received had defendants not breached the transportation contract, plaintiff would have expended 72.28% thereof, or $50,144.68.

The amount remaining after this deduction was $19,230.92, for which judgment was entered.

The defendants contended that depreciation should also have been deducted. Their experts estimated this at 12.7 per cent of the anticipated revenue, which would have further reduced the judgment by $8,810.70.

■ This seems to us the only real issue before this court. The trial judge concluded that the claimed depreciation was based entirely on obsolescence and should not be deducted from gross income to arrive at damages suffered by the plaintiff. He concluded, too, that any depreciation caused by wear and tear on the trucks, which was saved by not having to use them, was covered by the deduction made for repairs and maintenance.

As pointed out in *State ex rel. State Highway Comm'n v. Cone*, 338 S. W.2d 22, 27 (Mo. 1960),

Depreciation is considered as being of two types; conditions which are purely physical such as those caused by deterioration from wear and tear, and conditions usually referred to as functional depreciation which covers the effect of obsolescence and loss of adaptability.

The only item claimed by the appellants as a deduction, which was not deducted by the trial court from the gross income was the depreciation based upon the obsolescence of the equipment, which the plaintiff was not saved by the failure to use its trucks to do the hauling.

We are satisfied that the trial court properly analyzed the situation and properly refused to deduct the depreciation for obsolescence from the amount the plaintiff was entitled to receive.

The defendant appellant argues in its brief that the contract was illusory and hence unenforceable. We see no merit in this contention, but since it was never presented to the trial court, it will not be considered here. *Ledgering v. State*, 63 Wn.2d 94, 385 P.2d 522 (1963); *National Indem. Co. v. Smith-Gandy, Inc.*, 50 Wn.2d 124, 309 P.2d 742 (1957); *Orkney v. Valley Cement Co.*, 43 Wn.2d 338, 261 P.2d 114; *Lake Air, Inc. v. Duffy*, 42 Wn.2d 478, 256 P.2d 301 (1953).

There being no prejudicial error in the record, the judgment is affirmed.

ROSELLINI, C. J., OTT, HUNTER, and HALE, JJ., concur.