INHABITANTS OF WEST SPRINGFIELD & another *vs.*
VENANZIO MAYO & another.

Hampden.    September 20, 1928. — November 21, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Zoning. Municipal Corporations,* By-laws. *Attorney General. Public Officer.*

The rule of law, that official duties involving the exercise of discretion and judgment for the public welfare cannot be delegated, but can be performed only in person, goes no further than to require the official to exercise his own judgment and discretion upon matters which are committed to him for determination; it does not inhibit the official's use of assistance when the act to be done requires an examination or inspection of documents or physical objects, nor does it prohibit the official from arriving at a conclusion of fact which is based upon the report of an assistant.

Where a certified copy of a zoning by-law of a town and a map accompanying it and incorporated as a part of it were submitted to the Attorney General for his approval under G. L. c. 40, § 32, and were examined by an assistant attorney general and then the map was taken away and the by-law was approved by indorsement by the Attorney General upon the certified copy of it, such approval fulfilled the requirements of the statute, although the Attorney General did not himself see the map.

In the circumstances above stated, it was not necessary that the Attorney General should approve the map separate and apart from the by-law, nor was it necessary to the exercise of his judgment that the map should have been physically before him or that he personally should have examined it and traced the boundaries of the various zones: it was sufficient that the map was examined with the by-law for him, by one of his legal assistants, and that, after receiving the report of his assistant, upon his own judgment he approved the by-law of which the map was an integral part.

In a publication in a newspaper of a zoning by-law for the purpose of conforming to the requirements of G. L. c. 40, § 32, a map which accompanied and was incorporated as a part of the by-law, while it occupied one whole page and substantially one half of another page, was not as large as the original, was in black and white instead of in colors, did not contain any scale or compass point, but bore a key which indicated that the various zones were represented either by dots or by full or broken lines of different degrees of heaviness and proximity or by no markings at all, and omitted from its title the words "and nonconforming use." The original map, or a copy, was kept in the files of the town clerk at all times, except when it was removed temporarily

for use by the town engineer or planning board or for use in court, or for other transitory purposes. *Held*, that the publication was sufficient to satisfy the requirements of the statute.

BILL IN EQUITY, filed in the Superior Court on July 21, 1927, and afterwards amended, to enjoin the defendants from conducting a business on their land in violation of a zoning by-law of the town.

The suit was heard by *Broadhurst*, J. Material facts are stated in the opinion. The reference to the zoning map in the by-law was as follows: "Section 1 of the by-law, after stating that the town is divided into five classes of districts, declares that 'the boundaries of these districts are hereby established as shown on the Building Zone Map which accompanies and is hereby declared to be a part of these by-laws.'"

By order of the judge, the final decree quoted in the opinion was entered. The defendants appealed.

G. L. c. 40, § 32, reads as follows:

"Before a by-law takes effect it shall be approved by the attorney general, and shall be published at least three times in one or more newspapers, if any, published in the town, otherwise in one or more newspapers published in the county; or instead of such publication, notice of the by-law shall be given by delivering a copy thereof at every occupied dwelling or apartment in the town, and affidavits of the persons delivering the said copies, filed with the town clerk, shall be conclusive evidence of proper notice hereunder; provided, that any by-law in force upon May sixteenth, nineteen hundred and four, shall not be subject to this section."

The case was submitted on briefs.

*M. L. Davis*, for the defendants.

*E. A. McClintock, D. B. Hoar, & R. D. Houlihan*, for the plaintiffs.

PIERCE, J. This case comes before this court on the appeal of the defendants from a final decree filed in the Superior Court on December 31, 1927, the material part of which is as follows: "it is hereby ordered, adjudged and decreed that the defendants, the said Venanzio Mayo and the said

Paolina Mayo, and each of them, and the assigns, agents, servants and employees of them and of each of them, be and they hereby are perpetually restrained and enjoined from conducting on the land mentioned in the bill of complaint a grocery, meat or provision business or the business of keeping and selling gasoline or any other business in violation of the zoning by-law referred to in said bill of complaint; and that costs of suit in the sum of $17.25 be paid by the defendants to the plaintiffs."

Two questions are left open in the decision of *Mayo* v. *West Springfield*, 260 Mass. 594, 599: (1) Was the zoning by-law legally approved by the Attorney General? and (2) Was the by-law published as required by G. L. c. 40, § 32? The facts in relation to the approval of the by-law by the Attorney General appear in the following findings by the judge who heard the case: "Late in May, 1923, the town clerk submitted to one of the assistants attorney-general, one York, in the office of the Attorney-General at Boston, a certified copy of the zoning by-law, and the same map in two sections which had been displayed at the town meeting. The assistant attorney-general carefully examined the by-law and map for about an hour, and at the conclusion of the conference, Schmuck [the town clerk] at the suggestion of York took the map away, but left the certified copy of the by-law. Schmuck did not at that interview or at any other time personally see Jay R. Benton, who was then Attorney General of the Commonwealth, with reference to the approval of the by-law or of the map, and I find that Mr. Benton did not himself see the map. The certified copy of the by-law was returned to the office of the town clerk of West Springfield on or about June 5, 1923, bearing at the bottom of the last page thereof the approval in writing dated June 4, 1923, of Jay R. Benton, Attorney General."

In this respect the contention of the defendants is that the map is an essential part of the by-law, and that as matter of law the Attorney General could not approve the map which he did not see. Of course it is true, as the defendants contend, that "Official duties involving the exercise of discretion and judgment for the public weal cannot be delegated.

They can be performed only in person." *Brown* v. *Newburyport*, 209 Mass. 259, 266, and cases cited. Obviously this rule goes no further than to require the official to exercise his own judgment and discretion upon matters which are committed to him for determination. It does not inhibit the official's use of assistance when the act to be done requires an examination or inspection of documents or physical objects. Nor does it prohibit the official from arriving at a conclusion of fact which is based upon the report of an assistant. It was not necessary that the Attorney General should approve the map separate and apart from the by-law. Nor was it necessary to the exercise of his judgment that the map should have been physically before him or that he personally should have examined it and traced the boundaries of the various zones. It was sufficient that the map was examined with the by-law for him, by one of his legal assistants; and that, receiving the report of his assistant, upon his own judgment he approved the by-law of which the map was an integral part. *Lajoie* v. *Milliken*, 242 Mass. 508, 523.

On the question of the publication of the by-law, the findings of fact are as follows: "the town clerk caused to be prepared copies of the zoning map reduced in size for publication in a newspaper and caused the text of the by-law and the map to be published in the Evening Union; a daily newspaper published in the city of Springfield, in the editions of June 13, 14 and 15, 1923. The zoning map as published in the newspaper differed from that exhibited at the town meeting of course in size and also in the following particulars: The town meeting map showed the various zones in different colors; the newspaper map is wholly in black and white. The newspaper map bears a key which indicates that the various zones are represented either by dots or by full or broken lines of different degrees of heaviness and proximity, or by no markings at all. The title of the map as published in the newspaper is 'Building Zone Map, West Springfield, Massachusetts,' omitting the words 'and non-conforming use' which appear on the map used at the town meeting. The newspaper map also does not contain any scale or com-

, pass point.  The map as published in the newspaper occupied one whole page and substantially one half of another page, the remainder of the latter page being covered by the printed text of the by-law.  Since the approval of the by-law by the Attorney General, the zoning map, or a copy, has been kept in the files of the town clerk at all times, except when it has been removed temporarily for use by the town engineer or planning board or for use in court, or for other transitory purposes."  The publication was sufficient.  It is plain the map to be published in the newspaper could not be the same size as the original map, which was in two sections each about seventy inches long by forty-seven and one half inches wide; on the record it does not appear that the various zones reasonably could have been shown in different colors in newspapers intended for general circulation.

No other questions are argued by the defendants, and if there be any we consider them waived.

*Decree affirmed with costs.*