[No. 35834.   En Banc.   September 21, 1962.]

THE STATE OF WASHINGTON, *on the Relation of Frank D. Ralston, Appellant*, v. THE DEPARTMENT OF LICENSES *et al., Respondents.**

*Reported in 374 P. (2d) 571.

*Alva C. Long,* for appellant.

*The Attorney General* and *Robert J. Hall, Assistant,* for respondents.

FINLEY, C. J.—This is an appeal from a superior court judgment which sustained an order of the Department of Licenses suspending appellant's license to operate a motor vehicle.

The facts and events pertinent to our review of the license suspension are as follows: On September 28, 1960, Frank D. Ralston (appellant) was convicted in the Police Court of Tacoma, Washington, of "Drunk driving" in violation of a municipal ordinance. Pursuant to the requirements of RCW 46.52.100[1] and RCW 46.20.280[2], an abstract of the police

---

[1]"Every justice of the peace, police judge and clerk of superior court shall keep or cause to be kept a record of every traffic complaint, traffic citation or other legal form of traffic charge deposited with or presented to said justice of the peace, police judge, superior court or a traffic violations bureau, and shall keep a record of every official action by said court or its traffic violations bureau in reference thereto, including but not limited to a record of every conviction, forfeiture of bail, judgment of acquittal and the amount of fine or forfeiture resulting from every said traffic complaint or citation deposited with or presented to the justice of the peace, police judge, superior court or traffic violations bureau.

"The Monday following the conviction or forfeiture of bail of a person upon a charge of violating any provisions of this chapter or other law regulating the operating of vehicles on highways, every said magistrate of the court or clerk of the court of record in which such conviction was had or bail was forfeited shall prepare and immediately forward to the director of licenses at Olympia an abstract of the record of said court covering the case in which said person was so convicted or forfeited bail, which abstract must be certified by the person so required to prepare the same to be true and correct. Report need not be made of any conviction involving the illegal parking or standing of a vehicle.

"Said abstract must be made upon a form furnished by the director of licenses and shall include the name and address of the party charged, the number, if any, of his operator's or chauffeur's license, the registration number of the vehicle involved, the nature of the offense, the date of hearing, the plea, the judgment, or whether bail forfeited and the amount of the fine or forfeiture as the case may be. . . ."

[2]The pertinent statute relative to this case reads:

"Every court having jurisdiction over any of the offenses defined by this chapter or any other law of this state or by the ordinance of

court record relating to appellant's conviction was transmitted to the Director of Licenses. The Director, exercising administrative discretion as provided by RCW 46.20.290,[3] suspended appellant's operator's license for thirty days and conditioned reinstatement upon compliance with the safety responsibility act (RCW 46.24). The suspension was based upon the abstract of appellant's police court conviction, and was ordered on November 18, 1960. The period of suspension covered by the order was from October 26, 1960, to November 26, 1960. Notice of the suspension was received by the appellant on November 22, 1960.

On November 29, 1960, appellant filed a notice of appeal from the suspension, pursuant to RCW 46.20.340, and obtained an order from the superior court requiring the Director to show cause why appellant's operator's license should not be reinstated and the Director's order of suspension set aside. After a hearing, the superior court sustained the suspension by the Director of appellant's operator's license and entered judgment accordingly. Thereafter, appellant's motion for judgment notwithstanding the

---

any city or town regulating the operation of vehicles on the public highways, shall forward to the director a record of the conviction or forfeiture of bail of any person in such court for the violation of any provision of law relating to the licensing of vehicle operators or of any law regulating the operation of vehicles on the public highways, and a record of the conviction or forfeiture of bail of any person for the violation of any municipal ordinance which violation would also be an offense under the provisions of law relating to the licensing of vehicle operators or of any law regulating the operation of vehicles on the public highways. *In such latter case the court may also revoke or suspend the vehicle operator's license of the defendant.*" (Italics ours.)

The legal effect of the italicized portion of the above statute was determined in *Bellingham v. Schampera* (1960), 57 Wn. (2d) 106, 356 P. (2d) 292.

RCW 46.20.280 was amended by the 1961 legislature, Laws of 1961, Ch. 12. We make no determinations as to the legal effect of the 1961 amendment.

[3]"The director may in his sound discretion immediately suspend the vehicle operator's license of any person whenever he has reason to believe: . . .

"(4) That such person is a habitually reckless or negligent operator of a motor vehicle or has committed a serious violation of the motor vehicle laws of this state. . . ."

verdict or, in the alternative, for a new trial was denied. This appeal followed.

Basically, appellant makes three contentions: (1) The Department of Licenses failed to comply with the provisions of the Washington Administrative Procedure Act, RCW Title 34, because appellant was not afforded a hearing prior to suspension of his operator's license; (2) RCW 46.20-.290 (4) is unconstitutional because it sets no standards as to what constitutes a serious violation; and on the further ground that the words "or has committed" do not refer to a conviction and, therefore, deny due process and equal protection of the law under the applicable provisions of the state and federal constitutions; and (3) the Director is empowered to revoke or suspend operator licenses under RCW 46.20.290 (4) only for violations of state law, and "laws of this state," as used in this statute, does not include municipal ordinances. These contentions will be dealt with *seriatim*.

Appellant's first contention was recently before this court in the case of *Gnecchi v. State* (1961), 58 Wn. (2d) 467, 364 P. (2d) 225. This court held in that case that suspension of a motor vehicle operator's license by the Department of Licenses without a prior hearing did not violate the Administrative Procedure Act because (1) no constitutional or statutory provision requires a hearing prior to suspension; and (2) adequate safeguards are provided for control of the Director's action by appeal to the superior court. Appellant does not attempt to distinguish the *Gnecchi* case, but rather attacks it directly and asks that it be overruled. We are not inclined to do this. Appellant's first contention is therefore unavailing.

Appellant argues that the term "serious violation" fails to convey sufficiently definite warning as to the prescribed conduct measured by the term, and that RCW 46.20.290 (4) is for that reason unconstitutional and void for vagueness. In support of his argument appellant contends that the Director has unbridled discretion to classify violations as "serious." We need not determine the scope

of the statutory language or the limits of the Director's discretion. The question as to whether the Director, as appellant argues, could classify speeding five miles over the prescribed limit, following too closely, improper turning, or some other infraction of the rules of the road, as a "serious violation" is outside the scope of this case. It suffices to say that "drunk driving" is, under any reasonable interpretation, a serious violation of the traffic laws of this state.[4] Peripheral hypothetical situations, or marginal offenses, do not render a statute ineffective with respect to that which plainly falls within its terms. *Comstock v. Pierce Cy.* (1942), 14 Wn. (2d) 80, 127 P. (2d) 264. See also *In re Kindschi* (1958), 52 Wn. (2d) 8, 319 P. (2d) 824, quoting from *Jordan v. DeGeorge* (1951), 341 U. S. 223, 95 L. Ed. 886, 71 S. Ct. 703. We hold that the statute is sufficiently definite to give adequate warning that "drunk driving" falls within its terms.

The other aspect of appellant's second contention is based on the suggestion that the Director could suspend an operator's license merely on the belief that a violation of state laws has been committed even if there has been in fact no conviction of any violation. The simple answer to this contention is that there had been a conviction in the instant case, and an abstract of the police court record of the conviction was before the Director of the Department of Licenses. We will not assume that the Director will act arbitrarily in some future case, and that such a consideration should influence disposition of the instant case. *In re Thompson* (1904), 36 Wash. 377, 78 Pac. 899. We reserve the question as to whether a conviction is necessary to afford reasonable belief that a serious violation has been committed.

Appellant's third contention presents the most difficult

[4]RCW 46.56.010 provides that "It is unlawful for any person who is under the influence of or affected by the use of intoxicating liquor or of any narcotic drug to drive or be in actual physical control of any vehicle upon the public highways. . . ." We do not deem the fact that appellant was convicted of an offense labeled "drunk driving" instead of "driving under the influence of or affected by the use of intoxicating liquor" to be of any consequence.

question. Can the Director of the Department of Licenses act on the basis of a police court conviction of a violation of a municipal ordinance when the conduct constituting the offense also violates a state statute? Or, to put it another way, does the phrase, "laws of this state," as used in RCW 46.20.290 (4), include municipal ordinances which duplicate state statutory offenses?

Appellant cogently argues that, if the legislature had intended the Director to have the power to suspend licenses for convictions of violations of any municipal ordinance, explicit provision therefor would have been made. On the other hand, the department contends that RCW 46.52.100 and RCW 46.20.280 are useless unless the Director has the power to suspend operator licenses on the basis of the reports, and that this clearly indicates legislative intent.

Thus, we have here a situation necessitating a judicial evaluation of statutory language, and implementation thereof, in terms of purposeful legislative activity—a task which any reasonably prudent jurist would readily agree is usually most difficult. The easy way would be to rely on an appropriate maxim of statutory construction, attach it to a handy, predetermined conclusion, and pronounce judgment. It is at best a tenuous, difficult undertaking to attempt to articulate the real basis of a decision; *i.e.*, what the conglomerate mass activity of legislators did or did not accomplish and effectuate, in terms of legal sanctions, by enacting or formalizing given language into statutory law.

The automobile is a useful machine in our society, but it can also be a deadly weapon. The annual statistical report of the Washington State Patrol, Accident Records Division (1961), contains this information:

"There were 79,126 reported motor vehicle traffic accidents in the State of Washington for the year 1961, in which 32,907 persons were injured and 579 were killed. This compares to 75,129 accidents occurring in Washington during the year 1960, in which 30,080 persons were injured and 561 were killed. This is an increase of 5.3 per cent in total accidents, 9.4 per cent in number injured and 3.2 per cent in the number of traffic fatalities over 1960."

The need for reasonably effective regulatory procedures with respect to those who operate motor vehicles is indeed great. Furthermore, the magnitude of the problems involved increases with each year. Effective licensing can be, and is, a means of restraining unfit or irresponsible operators from endangering the lives of those who operate motor vehicles in a safe and responsible manner.

General supervision and control of operator licenses was placed in the hands of the Director of Licenses long ago. Laws of 1937, chapter 188, § 49, p. 817; now RCW 46.20.010. Municipal courts had no authority under the relevant statutes effective in this case to suspend operator licenses as a penalty for violation of municipal ordinances because the legislature did not bestow that power upon them. *Bellingham v. Schampera*, 57 Wn. (2d) 106, 356 P. (2d) 292. The reporting statutes, RCW 46.52.100 and RCW 46.20.280, require the transmission of records of all convictions to the Department of Licenses for designated purposes, among which is included possible use as a basis for suspension of operator licenses.[5] To conclude that the Director may not consider these reports and use them as a basis for ordering suspension would relegate these statutes to ministerial nuisances insofar as convictions in municipal courts are concerned.

In view of these statutory provisions and the *Bellingham v. Schampera* refinement of legislative purpose, it is not only reasonable but is necessary to conclude that violations of municipal ordinances (at least those that are at the same time violative of state statutes) are included in the phrase, "serious violation of the motor vehicle laws of this state" in RCW 46.20.290(4), and that the agency that is directed to supervise and control the field of motor vehicle

[5]Records of conviction transmitted by the courts are compiled in the individual case record of the driver concerned, and by RCW 46.52.120, the Director is compelled to ". . . tabulate and analyze vehicle operators' case records and to suspend, revoke, cancel, or refuse any vehicle operator's license to any person when it is deemed from facts contained in the case record of such person that it is for the best interest of public safety that such person be denied the privilege of operating a motor vehicle. . . ."

operator licenses has the power to suspend licenses for convictions of those violations of municipal ordinances that also violate state statutes. This interpretation gives cohesiveness to the various legislative provisions and direction to the obvious legislative policy, *i.e.*, providing a systematic, effective method of supervision of motor vehicle operator's licenses. It is also consistent with the requirements of our mechanized and motorized society, because it promotes the safety and welfare of the motoring public.

We have noted that the phrase, "provisions of this title," in RCW 46.08.190 was held to mean state statutes and not municipal ordinances in *Bellingham v. Schampera, supra.* The distinction there between state statutes and municipal ordinances had reference to particular enactments of the state legislature as opposed to legislative enactments in the general sense by other bodies, such as a municipality. "Laws of this state," as used in RCW 46.20.290(4), has a special and different connotation and does not have reference to enactments of the legislature alone. Rather the term connotes state law in the generic sense; *i.e.*, encompassing all sources of law including decisions of the courts and enactments by the state legislature and other legislative bodies, including municipalities. Our interpretation of "laws of this state" is, therefore, not inconsistent with the distinction in the *Bellingham* case.

The decision of the superior court should be and it is hereby affirmed.

HILL, DONWORTH, WEAVER, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.