[No. 36753. En Banc. February 14, 1963.]

THE STATE OF WASHINGTON, *on the Relation of Cosmopolis Consolidated School District No. 99, Grays Harbor County, Appellant,* v. LOUIS BRUNO, *as Superintendent of Public Instruction, et al., Respondents.**

*Reported in 378 P. (2d) 691.

*Manley & Kirkwood,* for appellant.

*The Attorney General, Bruce W. Cohoe, Assistant,* and *L. Edward Brown,* for respondents.

OTT, C. J.—This certiorari proceeding was previously before us upon a jurisdictional issue. *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno,* 59 Wn. (2d) 366, 367 P. (2d) 995 (1962). The cause was remanded to the court for a trial on the merits of whether the Grays Harbor County Committee on School District Organization and the State Board of Education, in fixing the contribution of Cosmopolis Consolidated School District No. 99 to the Aberdeen high school building program at $329,865, acted arbitrarily and capriciously, and contrary to law. The court found that the defendants had fixed the amount of the contribution

according to law, denied the writ, and dismissed the cause with prejudice.

From the judgment of dismissal, Cosmopolis Consolidated School District No. 99 has appealed.

For convenience, the Grays Harbor County Committee on School District Organization will hereinafter be referred to as the county committee, the State Board of Education as the state board, Aberdeen School District No. 5 as Aberdeen, and Cosmopolis Consolidated School District No. 99 as Cosmopolis.

The facts which gave rise to this review are as follows:

The appellant, Cosmopolis, is a nonhigh school district, and Aberdeen is a high school district. Cosmopolis has sent its high school students to Aberdeen for many years.

Pursuant to RCW 28.56.010, Aberdeen submitted to the county committee a request to prepare a plan for submission to the state board, providing for adequate and satisfactory participation by Aberdeen and Cosmopolis in the payment of the $1,289,544 necessary for the construction of additional high school facilities. In compliance with the request, the county committee, after notice and hearing, submitted the following proposal for the consideration of the state board:

"*Grays Harbor County—Aberdeen School District No. 5*
"A proposal for the financing of high school facilities in the Aberdeen School District No. 5, Grays Harbor County, Washington, by the following school districts of Grays Harbor County:

| School District Name | No. | | Amount to Be Provided[a] |
|---|---|---|---|
| Aberdeen | 5 | (high school district) | $1,079,544.00 |
| Cosmopolis | 99 | (nonhigh school district) | 210,000.00 |
| | | | $1,289,544.00 |

" [a] It is understood that districts eligible for State aid will be given full advantage of same."

The state board rejected the plan, stating:

"The foregoing proposal was not approved by the State Board of Education for the following reason:

"The plan submitted for meeting the cost of high school facilities in the Aberdeen School District did not include

a sufficient amount to be contributed by the Cosmopolis School District.

"It is *suggested* that another plan be submitted which is in conformity with principles and policies heretofore followed by the State Board of Education in considering a proposal for participation by non-high school districts in financing school facilities located in a high school district." (Italics ours.)

The state board suggested a revised plan which increased the contribution of Cosmopolis. The county committee met April 25, 1961, to consider the proposal submitted by the state board. The minutes of the secretary to the county committee state:

"In response to a question, Mr. Pence said that the State Board was insistent that the districts concerned participate on the basis of ratio of valuations. He then presented revised figures to the Committee which placed the Cosmopolis obligation at 25.58% and Aberdeen at 74.42% of the total, or $329,865.00 for the Cosmopolis share and $959,679.00 for the Aberdeen contribution. No member of the Committee had previously had any knowledge of these figures.

"Discussion followed in which extreme dissatisfaction with state policy and method was expressed, and question raised as to the function of the local committee.

"Mr. Spoon moved that a public hearing be held to consider a plan that 'is in conformity with principles and policies heretofore followed by the State Board of Education in considering a proposal for participation by non high districts in financing school facilities located in a high school district, predicated upon the assessed valuation of the two districts, one to the other, using current figures furnished by the County Superintendent of Schools.' Motion seconded by Mrs. Vavrek. Carried.

"With the consent of the Committee, Mr. Kellogg set Tuesday, May 9, for a public hearing at Cosmopolis. Meeting adjourned."

The secretary's minutes of the May 9, 1961, meeting are in part as follows:

"Mr. Taylor, Supt. of Schools, Aberdeen, presented the background of the events leading up to this hearing. Mr. Pence of the State Dept. of Education, read a statement of policy pertaining to this hearing.

" . . . William Ryberg asked about the formula of Mr. Pence and if any deviations from the State Board policy have been made. Several persons queried Mr. Pence along the same line. Mr. Pence successfully answered all questions without committing himself to firm answers. . . . Mr. Vincent, chairman of the Aberdeen School District Advisory Committee submitted to the County Committee that they should submit a plan that would receive State Board acceptance."

The county committee then went into executive session, and the minutes disclose that the following transpired:

" . . . Mr. Day moved that the county committee resubmit to the state the plan previously submitted. The motion was lost for want of a second.

"Mrs. Vavrek moved that the committee submit a plan that is acceptable to the State; one that provides for Cosmopolis to pay $329,865 and Aberdeen $959,679. The motion was lost for a want of a second."

The secretary's minutes of the meeting on May 17, 1961, are in part as follows:

"After calling the meeting to order, Mr. Kellogg said that it was the consensus of opinion that no action had been taken on the proposition for which the hearing of May 9 had been held; therefore the purpose of this meeting (May 17) was to complete the work of the May 9 hearing at Cosmopolis and dispose of the question on which the hearing was held.

"Mr. Pence of the State Dept. of Education corroborated Mr. Kellogg's opinion of the state of affairs. Discussion followed in which general dissatisfaction was expressed with regard to the proposal. . . .

"After further discussion, Mr. Spoon moved acceptance of the plan on which the hearing was held at Cosmopolis ($329,665.00 [sic] share of Cosmopolis; $959,679.00 share of Aberdeen); the proposal to be accompanied by a letter to the State Board expressing the adverse sentiments of the Committee. Motion seconded by Mrs. Vavrek. Poll of voting showed 4 ayes, one No. Motion carried."

In conformity with the motion, the following letter was written:

"May 17, 1962 [sic]

"To THE MEMBERS OF THE STATE BOARD OF EDUCATION:

"1. The Grays Harbor County Committee on School District Reorganization this date has taken the only action pos-

sible under the 'principles and policies of the State Board respecting participating financial proposals' in the Aberdeen-Cosmopolis high school building program.

"2. This Committee submitted a previous plan which was rejected and was in effect told that the only plan acceptable to the State Board was one that 'met with the principles and policies' of the State Board.

"3. The Committee is submitting this attached plan only because we do not desire to hold up the Aberdeen building program.

"4. Aberdeen merits greater entitlement from State funds than the 8.1 per cent provided by this proposal. Therefore, the Committee strongly urges allocation to this district the full twenty per cent of the project cost.

"GRAYS HARBOR COUNTY COMMITTEE
ON SCHOOL DISTRICT ORGANIZATION

"Signed: Harold B. Kellogg, Chairman Asa Fishel
Donald O. Spoon Mary C. Wroth
Charles Hay Ilah M. Vavrek
Kenneth Day"

The state board met on June 9, 1961, and the minutes disclose, *inter alia*:

"MEETING OF JUNE 9, 1961

"*Grays Harbor County—Aberdeen School District No. 5*

"A proposal for the financing of high school facilities in Aberdeen School District No. 5, Grays Harbor County, by the following school districts in Grays Harbor County:

| School District Name | No. | | Amount to Be Provided[a] |
|---|---|---|---|
| Aberdeen | 5 | (high school district) | $ 959,679.00 |
| Cosmopolis | 99 | (nonhigh school district) | 329,865.00 |
| | | | $1,289,544.00 |

" [a] It is understood that districts eligible for State aid will be given full advantage of same.

" . . .

"A letter from the Grays Harbor County Committee on School District Organization and a statement regarding the Cosmopolis school board's objections to the share Cosmopolis is being asked to contribute to the new Aberdeen high school project were submitted for the information of the Board. (Copies on file)

"*Motion*:

"It was moved by Mr. Bowle [*sic*] and seconded by Mr.

Little that the proposal as submitted by the Grays Harbor County Committee on School District Organization for participation by a nonhigh school district in the financing of high school facilities in the Aberdeen School District No. 5 be approved.

"Motion unanimously carried and so ordered by President."

The appellant poses the factual and legal questions involved in this appeal as follows:

"The questions presented by this appeal are whether the State Board and the County Committee acted arbitrarily and capriciously in determining the participative financing plan, the State Board by ignoring the considerations laid down by the legislature when it refused to accept any plan not based on a ratio of assessed valuations, the County Committee by abdicating its statutory duties, thus collaborating by acquiescence, or whether RCW 28.56.040 is unconstitutional as an unlawful delegation of legislative power."

The first question posed is whether the county committee and the state board acted arbitrarily and capriciously in fixing the amount of the capital contribution of Cosmopolis.

In *Smith v. Hollenbeck*, 48 Wn. (2d) 461, 464, 294 P. (2d) 921 (1956), we said:

"Arbitrary and capricious action on the part of an administrative agency has been defined as willful and unreasoning action, without consideration and in disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. [Citing cases.]"

Accord, *Lillions v. Gibbs*, 47 Wn. (2d) 629, 289 P. (2d) 203 (1955); *In re Employees of Buffelen Lbr. & Mfg. Co.*, 32 Wn. (2d) 205, 201 P. (2d) 194 (1948); *Sweitzer v. Industrial Ins. Comm.*, 116 Wash. 398, 199 Pac. 724 (1921).

In reviewing administrative action, we will not substitute our judgment for that of the administrative agency, and will set aside its determination only if the evidence establishes that it was the result of unlawful, arbitrary or capricious action. *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno*, 59 Wn. (2d) 366, 367 P. (2d) 995 (1962); *In re Townsend*, 54 Wn. (2d) 532, 341 P. (2d) 877

(1959); *Goodnoe Hills School Dist. No. 24 v. Forry*, 52 Wn. (2d) 868, 329 P. (2d) 1083 (1958).

 To determine whether an administrative agency has acted arbitrarily and capriciously, it is necessary to ascertain the scope of its statutory functions, and whether they have been properly performed.

RCW 28.56.010 provides that, upon receipt of a written request from the board of directors of a high school district for participation by a nonhigh school district to provide capital funds for facilities in the high school district, the county committee

". . . shall prepare a plan for participation by the nonhigh school districts in providing capital funds to pay the cost of school facilities and equipment to be provided for the education of students residing in the school districts. . . ."

RCW 28.56.020 provides that the county committee, in the preparation of the plan, shall give consideration to the following factors:

"The said county committee shall give consideration to:

"(1) The report submitted by the board of directors as stated above;

"(2) The exclusion from the plan of nonhigh school districts because of remoteness or isolation or because they are so situated with respect to location, present and/or clearly foreseeable future population, and other pertinent factors as to warrant the establishment of a high school therein within a period of two years or the inclusion of their territory in some other nonhigh school district within which the establishment of a high school within a period of two years is warranted;

"(3) The assessed valuation of the school districts involved in each case and the ability of each district to issue bonds within the limit of indebtedness prescribed by law;

"(4) The cash balance, if any, in the building fund of the district submitting the request which is designated for high school building construction purposes, together with the sources of such balance;

"(5) Any other factors found by the committee to have a bearing on the preparation of an equitable plan."

RCW 28.56.040 provides in part that, after notice and hearing on the proposed plan, pursuant to RCW 28.56.030,

". . . the county committee shall determine the non-high school districts to be included in the plan and the amount of capital funds to be provided by every district included therein, and shall submit the proposed plan to the state board of education . . . The state board shall review such plan, shall approve any plan which in its judgment makes adequate and satisfactory provision for participation by the nonhigh school districts in providing capital funds to be used for the purpose . . .

"If any such plan submitted by a county committee is not approved by the state board, the county committee shall be so notified, which notification shall contain a statement of reasons therefor and suggestions for revision. Within sixty days thereafter the county committee shall submit to the state board a revised plan which revision shall be subject to the procedural requirements and provisions of law applicable to an original plan submitted to said board."

■ The legislature has delegated to the county committee the duty to submit an equitable plan, based upon the factors in RCW 28.56.020. The legislature clothed the county committee with discretionary functions, when it provided that the committee "shall give consideration to . . . Any other factors found by the committee to have a bearing on the preparation of an equitable plan."

The legislature, by the enactment of RCW 28.56.040, limited the power of the state board to that of review and of making suggestions for revision of the plan. It did not grant to the state board the power to fix the nonhigh school district's participation, but only the right to approve such a plan as, in its judgment, provided adequate and satisfactory participation. The duty to prepare and submit an equitable plan, by applying the factors detailed in RCW 28.56.020, lies solely within the sound discretion of the county committee. See *Wheeler School Dist. No. 152 v. Hawley*, 18 Wn. (2d) 37, 137 P. (2d) 1010 (1943). The state board can reject a proposed plan only when, in its judgment, the plan submitted is inadequate and unsatisfactory. In exercising its judgment in this regard, the state board is duty bound to consider the same factors which

the legislature has provided for the promulgation of the plan that is before it for review. That the legislature intended the authority of the state board to be so limited is evidenced by the statutory requirement that the notification to the county committee of its action "shall contain a statement of reasons therefor and suggestions for revision," and that the county committee shall consider the suggestions and, within 60 days, prepare and submit a revised plan which, in the judgment of the committee, is "an equitable plan." The gravamen of the legislative enactment is that the county committee is to submit an equitable plan to the state board and to the voters in the districts involved.

With the statutory duties of the county committee and of the state board thus defined, does the record contain evidence which establishes arbitrary and capricious conduct on the part of the state board?

■ Appellant asserts that the disapproval of the original county committee plan by the state board constituted arbitrary and capricious action, in that the state board considered only the single factor of the assessed valuation of the school districts involved, and gave no consideration to the other statutory factors contained in RCW 28.56.020. The burden of proof lies with the appellant, Cosmopolis. *Goodnoe Hills School Dist. No. 24 v. Forry*, 52 Wn. (2d) 868, 329 P. (2d) 1083 (1958).

■ The record establishes that the state board gave consideration to all of the factors enumerated by the legislature, including, under the authority of subd. (5), the fact that "in 38 years Cosmopolis had contributed a total of $39,000 for high school facilities" to Aberdeen, and that the $210,000 contribution proposed by the county committee was insufficient in proportion to the contributions of other nonhigh school districts in the financing of facilities in high school districts.

We hold that, in rejecting the county committee's original plan and submitting its suggestions for revision, and in approving the county committee's second plan, the state board acted within its statutory authority.

Does the record establish arbitrary and capricious conduct on the part of the county committee?

▉ After the county committee received the rejection of the original plan, several meetings were held. The committee considered Cosmopolis' contention that, because of the comparative number of high school students involved, the assessed valuations of the two districts, and the constitutional limitation upon school district indebtedness, $210,-000 constituted an equitable contribution and $329,865 was inequitable. It likewise considered the contention of the state board representatives that the board's suggested contribution was equitable. After considering the facts, the county committee, in the exercise of its discretion, increased the amount of Cosmopolis' contribution to $329,865.

The appellant asserts that the county committee exercised its statutory discretion when it submitted the first plan, but that, thereafter, the county committee abdicated its statutory authority when it adhered to the state board's proposal because the committee "was in effect told that the only plan acceptable to the State Board was one that 'met with the principles and policies' of the State Board." The burden to establish that the county committee abdicated its statutory authority by allowing itself to be coerced into accepting the state board's proposal rests upon the appellant. *Goodnoe Hills School Dist. No. 24 v. Forry, supra.*

The record of the minutes of the April 25, 1961, meeting of the county committee stated that "Mr. Pence said that the State Board was insistent that the districts concerned participate on the basis of ratio of valuations." This statement is evidence that, in the opinion of the state board, a fair and equitable contribution would entail an amount based upon the ratio of assessed valuations. It does not follow that the county committee was obliged to adopt the proposal merely because it was the only one acceptable to the state board. The county committee, had it believed that the suggested amount of participation by Cosmopolis was inequitable and unjust, or lacked consideration of any one of the factors required by RCW 28.56.020, could have refused to adopt the state board's suggestions for revision.

The county committee also had the option to resubmit the original plan, with facts sustaining its findings, which option was considered and rejected. It likewise could have submitted a compromise plan, if, in its opinion, the contribution suggested by the state board was excessive; hence, inequitable.

In the light of the alternative courses of action available to, and considered by, the county committee, we cannot say that the record establishes that it was coerced into accepting the state board's suggestions for revision.

■ Finally, the appellant contends that RCW 28.56.040, which enumerates the powers of the state board, is an unlawful delegation of legislative authority, and, therefore, is unconstitutional. This issue was not presented to, or considered by, the trial court, which precludes us from considering it upon this appeal. *Long v. Odell*, 60 Wn. (2d) 151, 372 P. (2d) 548 (1962); *Gnecchi v. State*, 58 Wn. (2d) 467, 364 P. (2d) 225 (1961); *Johnson v. Seattle*, 50 Wn. (2d) 543, 313 P. (2d) 676 (1957); *State ex rel. York v. Board of Cy. Com'rs of Walla Walla Cy.*, 28 Wn. (2d) 891, 184 P. (2d) 577, 172 A. L. R. 1001 (1947).

The judgment of the trial court is affirmed.

HILL, WEAVER, HUNTER, and HAMILTON, JJ., concur.

HILL, J. (concurring specially)—I have signed the majority opinion, but am also filing this special concurrence to call attention to the facts of life.

If the state wants federal money, it meets the federal requirements.

If the school districts want state money for building construction or other purposes, they meet the state requirements.

It is as simple as that! The facade of local autonomy, and the development of plans by the county committee are seen in their true perspective when such a plan does not coincide with the requirements of the state board.

It is quite apparent that the amounts desired by the state board for the share of the Cosmopolis district ($329,865)

and for the share of the Aberdeen district ($959,670) in the high school construction costs were almost exactly in the same proportion as their assessed valuation.[1] What the assessed valuation ratio may have lacked in fairness and equity, it made up in ease of ascertainment. I am not impressed with the suggestion by counsel that it took a great deal of expertise to arrive at the amounts fixed by the state board.

Certainly, in the interest of local autonomy, I would have preferred to accept the plan of the county committee, their figures being weighted by other factors than assessed valuation,—such as the attendance in the high school from each district, *i.e.*, the service rendered and the value received.

However, I am unable to say that the state board's assessed valuation formula was arbitrary or capricious. Its use within a district is accepted with general approval, *i.e.*, school taxes are levied on the basis of the value of your property and not on the number of children you have in school.

If the Aberdeen and Cosmopolis school districts wanted state matching money for their high school building, they had to meet the state board's requirements, as they have done. Whether or not there should be state aid for the building of schools, without the surrender of local autonomy, is a problem for the legislature.

WEAVER and HAMILTON, JJ., concur with HILL, J.

ROSELLINI, J. (concurring in the result)—For the reasons which I have set forth at some length in my dissent to the earlier decision of this court in this case, *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno*, 59 Wn. (2d) 366, 367 P. (2d) 995, I am convinced that the action should not be entertained. The decision of the state board of education was not a judicial decision, but an administrative decision, and the difficulty which the court has experienced in attempting to evaluate the action of the board demon-

---

[1] The assessed valuation of the Cosmopolis district in 1961 was $7,063,928 and that of the Aberdeen district was $20,546,298.

strates most graphically why the court should not arrogate to itself jurisdiction over a question of this kind.

Be that as it may, the court has previously declared that it does have jurisdiction. The questions before the court, then, are (1) whether the board acted arbitrarily or capriciously when it refused to approve a plan submitted by the county committee and required the submission of a plan which met its standards, and (2) whether the county committee acted arbitrarily when it acceded to the demands of the state board.

As the majority have pointed out, the plan for participation is to be prepared in the first instance by the county committee, exercising its discretion but taking into account certain factors enumerated in the statute (as well as other factors which it might find significant), and this plan is subject to review by the state board. The state board has the right and duty to reject such a plan and require the submission of a new plan which will meet with its approval.[2] The facts set forth in the majority opinion show that this procedure was followed precisely in this instance. When the plan submitted by the county committee was found inadequate by the state board, suggestions were made for revisions. Those revisions were accordingly made. The plan was resubmitted and was approved by the state board. This procedure conformed to the requirements of the statute.

The point wherein I differ with the majority concerns the theory on which it is determined that the action of the county committee was not arbitrary or capricious. The majority say that the committee had alternative actions which it might take when the plan was sent back to it for revision, and that it exercised its discretion when it decided to submit a plan which it knew would be approved. In realty, it had no alternative, other than inaction, for it

---

[2] ". . . If any such plan submitted by a county committee is not approved by the state board, the county committee shall be so notified, which notification shall contain a statement of reasons therefor and suggestions for revision. . . ." RCW 28.56.040.

had been told that the board would only approve a plan which met with its principles and policies.

It is my interpretation of the statute that the county committee has discretion in drawing up a proposed plan but that the plan is always subject to review and rejection by the state board, which may then make suggestions for revisions and may require that these revisions be made. In other words, the plan submitted must conform to the standards set by the board, in the exercise of its judgment and discretion. If there is only one plan which will meet those standards, that is the plan which must be submitted in order to have the question presented to the voters. If that plan itself is not arbitrary or capricious, it cannot be held invalid. Such a plan was submitted and approved in this instance. The statutory procedure was followed. The result has not been shown to be arbitrary or capricious.

It is for these reasons that I would affirm the judgment.

DONWORTH and FINLEY, JJ., concur with ROSELLINI, J.