[No. 36799.   En Banc.   October 10, 1963.]

KENNETH M. LEDGERING, *Relator*, v. THE STATE OF WASHINGTON *et al.*, *Defendants*, THE SUPERIOR COURT FOR SPOKANE COUNTY, B. J. McLean, *Judge*, *Respondent.**

*Dressel & Lehan*, for relator.

*The Attorney General, Earl E. Yates* and *Dean A. Floyd, Assistants*, for respondent.

*Reported in 385 P. (2d) 522.

HAMILTON, J.—On May 14, 1962, relator was convicted in municipal court of the offense of aiding and abetting failure to leave information at the scene of an accident in violation of Ordinance No. C12833, § 46.52.020,[1] of the City of Spokane. Relator was fined $100. He did not appeal his conviction.

On June 29, 1962, the Department of Licenses, having received a record of such conviction from the municipal court, pursuant to RCW 46.20.280, without hearing administratively suspended relator's motor vehicle operator's license for a period of 6 months and until relator furnished proof of financial responsibility in accordance with the

---

[1]"(1) The operator of a vehicle involved in an accident resulting in the injury to or death of any person shall immediately stop such vehicle at the scene of the accident or as close thereto as possible and shall then forthwith return to and fulfill the requirements of subsection (3) of this section.

"(2) The operator of a vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or as close thereto as possible and shall forthwith return to, and in any event shall remain at, the scene of such accident until he has fulfilled the requirements of subsection (3) of this section.

"(3) The operator of a vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and vehicle license number and shall exhibit his vehicle operator's license to any person struck or injured or the operator of any occupant of, or any person attending, any such vehicle collided with and shall give such information and exhibit such license to any traffic or police officer at the scene of the accident and shall render to any person injured in such accident reasonable assistance, including the carrying or making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it [is] apparent that such treatment is necessary or if such carrying is requested by the injured person or on his behalf. In the event of death of any person resulting from an accident the driver of any vehicle involved, after fulfilling the requirements of subsection (1) of this section and the foregoing requirements of this subsection, and if there be no traffic or police officer at the scene of the accident to whom to give the information required by this subsection, shall without delay report such accident to the office of the Police Division of the City of Spokane and submit with such report the information required by this subsection. Under no circumstances shall the rendering of assistance or other compliance with the provisions of this subsection be evidence of the liability of any operator for the accident." City of Spokane Ordinance No. C12833, § 46.52.020.

requirements of RCW 46.24.040. Notice of such suspension was mailed on July 2, 1962, and received by relator on July 17, 1962.

Pursuant to RCW 46.20.340 relator timely appealed to the Superior Court of Spokane County. An appropriate order was issued, ordering the Director of the Department of Licenses and the Administrator of the Operators' Licenses and Financial Responsibility Division to show cause why relator's license should not be reinstated, and staying, pending hearing, surrender of relator's license.

In an affidavit filed in support of his motion for the order to show cause, relator alleged, in substance, that, at the time of the accident giving rise to the offense of which he was convicted, he was riding as a passenger in his own vehicle; the driver, following the accident, checked with the occupants of the other vehicle involved and, upon being advised that there were no injuries, requested relator to stay at the scene while she went on to work; relator remained upon the scene, discussed the details of the accident with the investigating officers and accompanied them to the driver's place of employment where the driver was interviewed; upon conviction of the offense with which he was charged relator was not advised of any prospective suspension of his license; relator had no previous moving motor vehicle violations or convictions; his driving license is essential to his employment; suspension will result in increased insurance premiums; and the action of the Department of Licenses was without investigation, without the exercise of discretion, and beyond the scope of the department's authority.

In response to the order to show cause, the Director of the Department of Licenses appeared through counsel, and the Administrator of the Operators' Licenses and Financial Responsibility Division appeared personally and through counsel.

The trial court restricted the hearing to a determination of whether the offense involved was such as authorized administrative action within the provisions of RCW 46.20-.290. Relator was precluded from offering any evidence

going to the merits of the suspension. Upon the issues so framed, the trial court determined the suspension to be valid and dismissed relator's appeal.

Relator, by way of certiorari, seeks review of the trial court's action, asserting four claims of error: (1) The Director of the Department of Licenses failed to personally appear at the hearing and thereby defaulted; (2) the Director of the Department of Licenses unlawfully delegated the power to suspend an operator's license to a subordinate; (3) the trial court improperly limited the scope of its review; and (4) the trial court erred in not declaring RCW 46.20.340 unconstitutional, insofar as such statute prohibits a stay of license suspension pending appeal.

We do not reach relator's first and fourth assignments of error. Relator did not, in the superior court, question the failure of the Director of the Department of Licenses to personally appear or affirmatively assert the unconstitutionality of any portion of RCW 46.20.340.

We will not review questions raised for the first time on appeal. *Rutter v. Rutter*, 59 Wn. (2d) 781, 370 P. (2d) 862; *In re Henderson v. McCullough*, 61 Wn. (2d) 90, 377 P. (2d) 244; *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno*, 61 Wn. (2d) 461, 378 P. (2d) 691.

The principal statutes involved in this review are RCW 46.20.290 and RCW 46.20.340. They provide as follows:

"The director may in his sound discretion immediately suspend the vehicle operator's license of any person whenever he has reason to believe:

"(1) That such person has committed an offense for which mandatory suspension or revocation of licenses is provided by law;

"(2) That such person has, by reckless or unlawful operation of a motor vehicle, caused or contributed to an accident resulting in death or injury to any other person or serious property damage;

"(3) That such person is incompetent to drive a motor vehicle or is afflicted with mental or physical infirmities or disabilities rendering it unsafe for such person to operate a motor vehicle upon the public highways; or

"(4) That such person is a habitually reckless or negligent operator of a motor vehicle or has committed a serious violation of the motor vehicle laws of this state.

"Whenever the director suspends the vehicle operator's license of a person for any reason, he shall immediately notify the licensee in person or by registered or certified mail, and may thereafter upon further information either rescind his temporary order of suspension, or, good cause appearing therefor, may continue in force such suspension for the full period thereof." RCW 46.20.290.

"The suspension, revocation, cancellation, or refusal by the director of any license or certificate provided for in this and chapters 46.12, 46.16 and 46.20, shall be conclusive unless the person whose license or certificate is suspended, revoked, canceled, or refused appeals to the superior court of Thurston county, or at his option to the superior court of the county of his residence, for the purpose of having the suspension, revocation, cancellation, or refusal of such license or certificate set aside. Notice of appeal must be filed within ten days after receipt of the notice of suspension, revocation, cancellation, or refusal. The appeal shall not supersede the suspension, revocation, cancellation or refusal of the license or certificate by the director. Upon the filing of the notice of appeal the court shall issue an order to the director to show cause why the license should not be granted or reinstated, which order shall be returnable not less than ten days after the date of service thereof upon the director. Service shall be in the manner prescribed for service of summons and complaint in other civil actions. Upon the hearing on the order to show cause, the court shall hear evidence concerning matters with reference to the suspension, revocation, cancellation, or refusal of the license or certificate and shall enter judgment either affirming or setting aside such suspension, revocation, cancellation, or refusal." RCW 46.20.340.

By his second assignment of error, relator challenges the authority of the director to delegate to the administrator the discretionary power to suspend operators' licenses. In short, relator invokes the general principle of law, expressed in the maxim *delegatus non potest delegare*, that, absent consent of the principal, a delegated power may not be further delegated, especially when the power involved is one calling for the exercise of discretion. Black's Law Dictionary (4th ed.).

In support of his contention, relator points to the following testimony elicited from the administrator:

"Mr. Lehan: Mr. Bertocchini, your action, if I understand your affidavit, in endeavoring to suspend this driver's license administratively, was based solely upon a certification of a record of conviction by Judge Lower of the municipal court of Spokane? A. This is correct. Q. There was no independent investigation of any nature carried on? A. It wasn't necessary. Q. Well, whether it was or not, there was none? A. Well, I must reiterate to the same answer, counsel. Q. And who brings a matter of this kind to your attention? A. Who brings what matter to my attention? Q. This exhibit No. 1, this notice of suspension of operator's license. A. My clerks. Q. A reviewer No. C? A. Right. Q. And who is he or she? A. He or she is one of the four persons that part of their job is to effect these suspensions and notify the licensees. Q. They do it? A. Right. Q. You don't? A. They put it in the mail. You understand there is certain physical work involved in suspending a license."

Counsel for the director, in response, relies upon the affidavit of the administrator to the effect that he has been deputized to sign and issue notices of suspension on behalf of the director, and also upon RCW 43.24.010 and 46.20.010, providing as follows:

"The director of licenses shall have charge and general supervision of the department of licenses.

"He may appoint such clerical and other assistants as may be necessary to carry on the work of the department, deputize one or more of such assistants to perform duties in the name of the director, and designate one assistant as chief clerk and secretary of the department." RCW 43.24.010.

"The director of licenses shall have the general supervision and control of the issuing of vehicle operators' licenses and shall have the full power to do all things necessary and proper to carry out the provisions of this chapter relating to the licensing of vehicle operators; he shall have the power to appoint and employ deputies, assistants and representatives, and such clerks as shall be required from time to time, . . ." RCW 46.20.010.

We are satisfied that the legislature in enacting the foregoing statutes was cognizant of the multitudinous licensing functions carried on by the Department of Licenses,

and recognized the practical and realistic administrative necessity of providing the director with assistants to carry out licensing duties.

We do not believe, however, that when the legislature vested in the director discretionary power to suspend motor vehicle operators' licenses, under the provisions of RCW 46.20.290, it, absent express declaration, intended the power of executive decision in this area be delegated by the director to assistants, or relegated to a simple mechanical process.

Gathering, collating, and presenting such facts as may be required by the director, together with making appropriate recommendations, preparing, signing, and mailing notices and orders in the name of the director are without doubt delegable duties. But, the basic responsibility and authority of exercising the discretion and power of decision, vested by RCW 46.20.290, rests exclusively with the director.

The rule is aptly stated by the Supreme Court of the state of Wisconsin, in *School Dist. No. 3 of the Town of Adams v. Callahan*, 237 Wis. 560, 576, 297 N. W. 407, 135 A.L.R. 1081, as follows:

" . . . the rule that requires an executive officer to exercise his own judgment and discretion in making an order of such nature does not preclude him from utilizing, as a matter of practical administrative procedure, the aid of subordinates directed by him to investigate and report the facts and their recommendation in relation to the advisability of the order, and also to draft it in the first instance. *Inhabitants of West Springfield v. Mayo*, 265 Mass. 41, 163 N. E. 653; *United States v. Standard Oil Co. of California* (D. C.), 20 Fed. Supp. 427, 448; *People's United States Bank v. Gilson*, (C. C.), 140 Fed. 1, 5; *Lewis Publishing Co. v. Wyman* (C. C.), 152 Fed. 787; *United States v. Chemical Foundation*, 272 U. S. 1, 14, 47 Sup. Ct. 1, 6, 71 L. Ed. 131; *State ex rel. Roberts v. Watson* (Tenn.), 39 S. W. 536, 538. It suffices that the judgment and discretion finally exercised and the orders finally made by the superintendent were actually his own; and that there then attaches thereto the presumption of regularity in order to effectuate the intent manifested thereby. . . ."

We appreciate that, in any given case, the line between the exercise of independent judgment on the part

of the director and reliance upon the judgment of a subordinate is difficult, if not impossible, to locate or define. Necessarily, it becomes a matter of degree, dependent to a large extent upon administrative practice, policy, and judgment. Courts cannot, and should not, undertake a probe of the mental processes utilized by an administrative officer in performing his function of decision. *United States v. Morgan*, 313 U. S. 409, 85 L. Ed. 1429, 61 S. Ct. 999. Likewise, courts must, in the absence of evidence to the contrary, presume public officers perform their duties properly, legally, and in compliance with controlling statutory provisions. *Smith v. Hollenbeck*, 48 Wn. (2d) 461, 294 P. (2d) 921.

In the instant case, except for the appearance of the director's typewritten name upon the notice of suspension, the record is devoid of any evidence of an exercise of the power of decision by the director. On the contrary, from the testimony of the administrator it would appear that either he or a "reviewer" independently and perfunctorily exercised the discretionary power vested in the director.

The trial court made no finding of fact or conclusion of law upon this issue. In view of our disposition of relator's next assignment of error, the cause is remanded to the trial court for the taking of such further relevant and competent evidence upon this issue as may be tendered by the parties, and for the entry of appropriate findings and conclusions thereupon.

By his third assignment of error relator asserts the trial court erred in limiting its review of the administrative suspension to a determination of whether the offense involved authorized administrative action under RCW 46.20.290.

In this respect, counsel for the Department of Licenses contends (a) the offense involved falls within the provisions of RCW 46.20.290(1) or (4), and (b) absent evidence of arbitrary or capricious action, the suspension must be sustained.

Relator does not here dispute contention (a). In response to contention (b) relator contends that to properly review the action of the Department of Licenses it is essential that

the trial court have before it not only the law, but also facts bearing upon the merits of the suspension, *i.e.*, the nature of the offense, the relationship of such offenses to over-all traffic safety, the circumstances surrounding commission of the particular offense involved, the past driving record of the offender, the penalties imposed by the municipal court, the civic responsibility of the offender, and any other facts and circumstances properly bearing upon the wisdom of the suspension in keeping with public safety, accident prevention, and owner and driver responsibility.

We agree with relator.

RCW 46.20.290 imposes upon the director the obligation to exercise a "sound discretion" in administrative suspensions. RCW 46.20.340 directs the superior court, upon an appeal from any administrative suspension, to "hear evidence concerning matters with reference to the suspension . . . and . . . enter judgment either affirming or setting aside such suspension . . ."

In *Merrit School Dist. No. 50 v. Kimm*, 22 Wn. (2d) 887, 891, 157 P. (2d) 989, we defined discretion in the following terms:

"Discretion implies knowledge and prudence and that discernment which enables a person to judge critically of what is correct and proper. It is judgment directed by circumspection. The discretion given by law to certain individuals, such as appellant in this case, does not mean that they have a power of free decision or that they may pursue an undirected course. The discretion is one regulated by well-known and established principles of law and equity. It must be legal and regular, exercised in the spirit of reason and not ruled or governed by humor."

In *Gnecchi v. State*, 58 Wn. (2d) 467, 470, 364 P. (2d) 225, speaking of statutory and constitutional rights revolving about summary administrative action under RCW 46.20-.290, we stated:

". . . The legislature may, in the reasonable exercise of the police power in the interest of public safety, authorize a state agency to act summarily, provided the party aggrieved has an opportunity to present his case on its merits sometime before the action becomes final. . . ."

" . . . Persons aggrieved by a license suspension under RCW 46.20.290 may obtain a fully *de novo* review in superior court under RCW 46.20.340. The requirements of due process were therefore satisfied, and the plaintiff was not entitled to a hearing by reason of any constitutional right prior to the suspension of his license by the director."

█ We thus recognized, inferentially, if not directly, that inhering in possession of a motor vehicle operator's license, whether such be denominated a privilege or a right, was an interest of sufficient value that due process of law required a full hearing at some stage of a deprivation proceeding.

Counsel for the Department of Licenses, however, contends that licensing and regulation of vehicle operators, within the contemplation of RCW 46.20.290 and 46.20.340, is essentially a legislative and administrative function, thus limiting the scope of the superior court's review of administrative action thereunder to a determination of whether the director acted arbitrarily, capriciously, or contrary to law. Counsel relies, in this respect, upon *Household Finance Corp. v. State*, 40 Wn. (2d) 451, 244 P. (2d) 260.

In *Floyd v. Department of Labor & Industries*, 44 Wn. (2d) 560, 565, 570, 269 P. (2d) 563, we said:

"We did *not* decide in *Household Finance*—and the case cannot be considered as authority for the position—that *all* administrative agencies exercise essentially legislative and administrative functions and thus their decisions are not reviewable in a court of law except to determine whether their orders are arbitrary, capricious or illegal. . . .

" . . .

"Without belaboring the point further, we hold that there is a distinction between the types of decisions rendered by different administrative agencies and that some agencies perform judicial or quasi-judicial functions while others do not.

" . . .

"When courts are confronted with the problem of determining whether an administrative agency performs legislative or judicial functions, they rely on certain tests to aid in classifying the agency's functions. One such test, mentioned in *Household Finance*, is whether the court could have been charged in the first instance with the responsi-

bility of making the decisions the administrative body must make. Another test is whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body. *Old Colony Trust Co. v. Commissioner of Internal Revenue*, 279 U. S. 716, 73 L. Ed. 918, 49 S. Ct. 499; *State ex rel. Attorney General v. Hawkins*, 44 Ohio St. 98, 5 N. E. 228, 42 Am. Jur. 368, Public Administrative Law, § 60, and cases cited therein.

"The classic statement setting out the abstract test to be applied by courts in distinguishing the judicial power from legislative power when examining administrative agencies was made by Justice Holmes speaking for the court in *Prentis v. Atlantic Coast Line Co.*, 211 U. S. 210, 53 L. Ed. 150, 29 S. Ct. 67. He there said:

" 'A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.'

"In applying tests to distinguish legislative from judicial powers, courts have recognized that it is the nature of the act performed, rather than the name of the officer, board, or agency which performs it, that determines its character as judicial or otherwise. *Prentis v. Atlantic Coast Line Co., supra.* This court, as long ago as 1901, reached the same conclusion in *Selde v. Lincoln County*, 25 Wash. 198, 65 Pac. 192."

■ Examination of the motor vehicle code and its provisions relating to revocation and suspension of operators' licenses reveals that, historically and currently, courts have been charged with the responsibility and have performed the function of license revocation and suspension.

We accordingly hold that the director, in administratively suspending an operator's license under the provisions of RCW 46.20.290, performs an essentially judicial function. Consequently, the superior court in reviewing such function, under the provisions of RCW 46.20.340, is not limited to a determination of whether the director acted arbitrarily, capriciously, or contrary to law. The appealing licensee is

entitled to a full de novo hearing and judicial findings, conclusions, and decision upon the merits of the suspension.

The trial court erred in limiting the scope of relator's hearing. The order dismissing relator's appeal is reversed, and the cause remanded to the superior court for further proceedings in conformity herewith.

OTT, C. J., HILL, DONWORTH, WEAVER, ROSELLINI, and HUNTER, JJ., concur.

FINLEY, J. (concurring)—The full sweep of the majority opinion clearly sets aside existing administrative procedures and substitutes full de novo judicial examination, review, and resolution of cases *substantially comparable to the instant one*, involving the regulation of motor vehicular traffic and the right of individuals to operate motor vehicles. There seems little reason to reiterate the facts and circumstances set out by the majority; nor is there need to refer in detail to the complexities and the confusions of the existing administrative-regulatory legislative pattern which was followed or applied somewhat *ad hoc*, to say the least, in the instant case. These matters are obvious from reading the majority opinion and the decisions in *Gnecchi v. State* (1961), 58 Wn. (2d) 467, 364 P. (2d) 225, and *State ex rel. Ralston v. Department of Licenses* (1962), 60 Wn. (2d) 535, 374 P. (2d) 571.

I have been reluctant to concur in the majority opinion. My reluctance has been because the full sweep of the majority opinion *seems* to override some reasonably well established, workable, and acceptable modern concepts respecting the relationships and the interrelated functions of administrative regulatory agencies and the courts, as well as the review of actions and decisions of the former by the latter. However, I now concur. My reasons for doing so are: First, I am convinced that there is no alternative except for the judiciary to require and provide (as attempted in the majority opinion) some semblance of a reasonable legal procedure as a due process check upon the chaotic procedure instanced in the present case, to say nothing of that instanced in *Gnecchi v. State, supra,* and

*State ex rel. Ralston v. Department of Licenses, supra.*
Second, my concurrence also is prompted by the conviction
that the majority decision herein will be regarded as *sui
generis* and should be cited as precedent for only compar-
able cases in this particular field of administrative law.
Parenthetically, it may be hoped that private and govern-
mental administrative and other agencies, (a) interested
and concerned with the safety of the motoring public, and
(b) likewise interested and concerned that appropriate
regulation of motor vehicular traffic be efficient and effective,
but be accomplished in a fair, reasonable and due-process
manner, may be stimulated to participate and cooperate in a
study and research project, the objective of which would
be a well planned, well drafted, and effective but fair and
reasonable over-all code (a) for the regulation of motor
vehicular traffic, (b) for the protection of the motoring
public, and (c) to provide reasonable due process protec-
tions to any citizens charged with motor vehicle violations.

December 10, 1963. Petition for rehearing denied.